Argued March 17; affirmed April 20, 1948

# RUCH *v.* RUCH

192 P. (2d) 272

*Robert R. Rankin,* of Portland, argued the cause for appellant. With him on the brief was Edwin D. Hicks, of Portland.

*Ernest J. Burrows,* of Portland, argued the cause and filed a brief for respondent.

Before Rossman, Chief Justice, and Belt, Bailey, Brand and Hay, Justices.

BELT, J.

Plaintiff appeals from an order modifying a decree of the circuit court with reference to the custody of a minor child. Plaintiff and the defendant were married at Portland, Oregon, on September 2, 1940, and there was born on October 31, 1942, as an issue of this marriage, a son named Leon. On August 8, 1946, plaintiff commenced a suit for divorce against his wife on the ground of cruel and inhuman treatment—she "cared for another man." Personal service was had on the defendant, but she defaulted and made no appearance. On August 31, 1946, the court entered a decree of divorce in favor of the plaintiff and awarded him the absolute care and custody of the minor child, giving to the mother the right of reasonable visitation.

On October 2, 1946, defendant moved for a modification of the decree so as to award her the care and custody of her son. The plaintiff opposed such motion and through affidavits charged, in effect, that the defendant was morally unfit to have the care and custody of her child. The hearing on this motion is reflected in a transcript of over 400 pages of evidence, together with numerous affidavits and counter affidavits.

An order was entered modifying the decree by awarding the defendant the custody of the child and requiring that the plaintiff pay to her the sum of $40.00 per month for its support and maintenance.

This court feels a grave responsibility in determining the delicate and important question affecting the welfare of this little boy. Much thought and study has been given to the record. In some respects it is, indeed, a sordid tale of marital difficulties and experiences. It would reflect no credit on the parties involved to make a permanent record of an "act of indiscretion" which, no doubt, has caused this mother to suffer, as she says, a "thousand deaths." On the other hand, the plaintiff husband is no paragon of virtue, as is evidenced by his own affidavit. In fairness to this boy —who is the innocent victim of it all—we prefer to state our conclusions from the record rather than to indulge in a detailed recital of the evidence.

Plaintiff strongly urges that his fitness to have the custody of the child has been adjudicated and that there is no material evidence showing a subsequent change of conditions since the rendition of the decree affecting the welfare of the child. The defendant admits that she knew that the plaintiff in his complaint in the divorce proceedings was asking for the absolute custody of the child. Indeed, this matter was thoroughly explained to the defendant by counsel for the plaintiff. She asserts, however, that there was a secret understanding between the plaintiff and her that she was to have the actual physical custody of her child. She contends that had it not been for this agreement, she would have appeared and contested the plaintiff's claim to have the custody of the boy awarded to him. We are convinced that the parties had such an agreement. It was so found by the trial court.

The testimony of the plaintiff relative to this phase of the case was quite evasive. It was stipulated by counsel that the question of the welfare of the child should be investigated by an officer of the Court of Domestic Relations, Multnomah county, and that a report of the investigation be submitted to the circuit court for its consideration. Pursuant to this stipulation, various witnesses—a list of which was furnished by counsel—were interviewed. The probation officer in her report states that the plaintiff admitted that there was an agreement between him and his wife that "he would obtain custody of his son but Mrs. Ruch would have physical custody." When the decree of divorce was entered, the child was left in the physical custody of its mother for a period of about three weeks. During this period the father would take the child on week ends to the paternal grandparents' home in the country about twelve miles distance from Portland. On the third week-end visitation, he refused to return the child to its mother.

██ Had the court in the original divorce proceedings been advised about this "secret" agreement, it might have made a different decree relative to the custody of the child. A fraud was perpetrated on the court. That part of the decree pertaining to the custody of the child had no force or effect. We are permitted to consider the entire record to determine what is best for the welfare of this child. *Milner v. Gatlin,* 143 Ga. 816, 85 S. E. 1045, L. R. A. 1916 B, 977.

█ Until this divorce decree was rendered, the defendant had always had the care and custody of her child. She was a good mother. The record is replete with evidence of her undying love and devotion for her baby. We are not unmindful that the father also loves his boy and that the paternal grandparents — with

whom the boy is now living—have great affection for him. The child, however, is a part of the flesh and blood of the mother. It is she who brought this little fellow into the world, and, in our opinion, is entitled to his custody. Courts will not deprive a mother of the custody of a child of tender age, unless it is clearly shown that she is morally unfit to have it. The mother in the instant case has shown true repentance for her "act of indiscretion." She should not be forever condemned. *Leverich v. Leverich*, 175 Or. 174, 152 P. (2d) 303; *Baier v. Baier*, 172 Or. 83, 139 P. (2d) 562; *Sorge v. Sorge*, 112 Wash. 131, 191 P. 817; 17 Am. Jur. 519, § 684. Counsel in oral argument advised the court that defendant has remarried. We think she will continue to give to this boy the tender care and love to which he is entitled and which is so necessary to his proper development to manhood.

■■ A modification of a divorce decree with respect to the custody of a minor child is a matter resting largely in the sound discretion of the trial court. This broad discretion is vested in the trial court because the judge who sees the witnesses and the parties and hears the testimony is in a better position than the appellate court, which has only the cold record before it, to weigh the evidence and determine what disposition of the care and custody of the child will best promote its welfare. *Nelson v. Nelson*, 181 Or. 494, 176 P. (2d) 648, and authorities therein cited. Also see 27 C. J. S. 1176; § 310; 27 C. J. S. 1263, § 324, subd. 5; 17 Am. Jur. 513, § 675; 2 Nelson, Divorce and Annulment, (2nd ed.) § 15.50. In our opinion there is substantial evidence to support the finding of the circuit court, and no abuse of judicial discretion has been shown.

The decree of modification is affirmed. Defendant is entitled to costs and disbursements.