Motion to stay proceedings denied April 11, 1950; argued June
19, 1951, reversed July 6, petition for rehearing
denied August 14, 1951

## SAKRAIDA *v.* SAKRAIDA

217 P. 2d 242
233 P. 2d 762

*Coulter, James & Coulter,* of Grants Pass, for the motion.

*Miller & Mikesell,* of Grants Pass, contra.

LUSK, C. J.

A decree of divorce in favor of the appellant awarded her the custody of the minor child of the parties. Afterwards, on motion of the respondent, the decree was modified so as to award the custody of the child to him. The appellant duly served and filed notice of appeal from the modifying order and gave an undertaking to pay all damages, costs and disbursements which might be awarded against her on the appeal. The child is in the actual custody of the respondent, and the appellant has now moved this court for an order restoring the custody to her pending the appeal, on the ground that the appeal bond stays the proceedings.

Our statutes relating to the undertaking on appeal are as follows:

Section 10-804, O. C. L. A. "The undertaking of the appellant shall be given with one or more sureties, to the effect that the appellant will pay all damages, costs, and disbursements which may be awarded against him on the appeal; but such under-

taking does not stay the proceedings, unless the undertaking further provides to the effect following:

"(1) If the judgment or decree appealed from be for the recovery of money, or of personal property, or the value thereof, that if the same or any part thereof be affirmed, the appellant will satisfy it so far as affirmed;

"(2) If the judgment or decree appealed from be for the recovery of the possession of real property, for a partition thereof, or the foreclosure of a lien thereon, that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if such judgment or decree or any part thereof be affirmed, the appellant will pay the value of the use and occupation of such property, so far as affirmed, from the time of the appeal until the delivery of the possession thereof, not exceeding the sum therein specified, to be ascertained and tried by the court or judge thereof;

"(3) If the decree appealed from require the transfer or delivery of any personal property, unless the things required to be transferred or delivered be brought into court, or placed in the custody of such officer or receiver as the court may appoint, that the appellant will obey the decree of the appellate court. The amount of such undertaking shall be specified therein, and be fixed by the court or judge thereof;

"(4) When the decree appealed from is for the foreclosure of a lien, and also against the person for the amount of the debt secured thereby, the undertaking shall also be to the effect that the appellant will pay any portion of such decree remaining unsatisfied after the sale of the property upon which the lien is foreclosed.

"When the decree appealed from requires the execution of a conveyance or other instrument, execution of the decree is not stayed by the appeal,

unless the instrument is executed and deposited with the clerk within the time allowed to file the undertaking, to abide the decree of the appellate court.''

Section 10-805, O. C. L. A. (in part):

''* * * The court or judge thereof, in its discretion, may dispense with or limit the further undertaking required by subdivisions 1, 2, 3 and 4 of section 10-804, when the appellant is an executor, administrator, trustee, or other person acting in another's right. In cases not provided for in such subdivisions; when an appeal is perfected, with an undertaking for the appeal only, proceedings shall be stayed as if the further undertaking thereof had been given.''

Whether the quoted portion of § 10-805 is applicable in any circumstances to a case of this kind is a question left in doubt by our decisions. In *Bestel v. Bestel,* 153 Or. 100, 44 P. (2d) 1078, 53 P. (2d) 525, it was held that on appeal from an order granting the custody of a child the undertaking mentioned in § 10-805 was sufficient in and of itself to stay the proceedings and that no separate order by the court for this purpose was necessary. It was there assumed that an appeal from such an order was governed by § 10-805. The decision was upon authority of *In re Vinton,* 65 Or. 422, 132 P. 1165. The construction announced in these cases is not in harmony with what was said on the subject in the later case of *Workman's Estate,* 156 Or. 333, 353, 65 P. (2d) 1395, 68 P. (2d) 479. In view of the particular facts of this case, however, the present motion can be decided without reference to that apparent conflict.

The facts, as shown by affidavits filed by the parties are these: The order modifying the decree of divorce and awarding the custody of the child to his father was made on January 16, 1950. On the 19th of

January the appellant delivered the child to the Josephine County General Hospital to undergo an operation for a hernia, and on January 30 the respondent obtained the actual custody of the boy—apparently from the hospital. The parties are in disagreement as to the arrangements made when the boy was taken to the hospital. The respondent claims that it was understood that he was to take the boy when he was ready to be released from the hospital, while the appellant disputes this. The appellant served and filed her notice of appeal and undertaking on the same day that the respondent got possession of the boy, namely, January 30, 1950. Which of these events came first is not disclosed.

■■ The motion must be denied because the only purpose of a stay bond is to "stay the proceedings" in the court below. §§ 10-804 and 10-805. No proceedings are being taken in the Circuit Court for the enforcement of the modifying order, and what the appellant is actually seeking is not an order which will stay proceedings in that court but one which will operate to deprive the respondent of the actual custody of the child, lawfully acquired for all that appears, and restore that custody to the appellant. The undertaking on appeal cannot be used to accomplish that purpose in a case of this kind. It was so held in *De Lemos v. Siddall,* 143 Cal. 313, 76 P. 1115. There, upon motion for modification of a divorce decree, the custody of a minor child was awarded to the father. The mother delivered the child to the father. Afterwards she appealed and gave a stay bond under a statute similar to § 10-805, O. C. L. A. She then instituted a proceeding for a writ of habeas corpus to recover custody of the child, basing her prayer entirely on the fact that she had appealed and

given an undertaking on appeal, which was in law a stay bond. The court denied her petition on the ground that the bond merely "stays proceedings in the court below upon the judgment or order appealed from (Code Civ. Proc., § 949)", and that the court was not taking any proceeding on that order. The case was distinguished from *Ex parte Queirolo,* 119 Cal. 635, 51 P. 956, in which the court modified a decree of divorce by awarding the custody of minor children to the father, and the mother appealed from such order and gave a stay bond, and the court made an order directing her to deliver the children to the father and sent her to jail for not obeying. The court held that, after the appeal had been perfected, the lower court had no power to take any further proceedings to enforce the order appealed from. In the *De Lemos* case, however, the court said: "But in the case at bar no order was made, and no proceeding attempted, to enforce the modification of the judgment after the appeal. The modifying order was complied with by petitioner, and it was thus executed before any appeal; and the superior court had done nothing in the premises since."

*Willis v. Willis,* 165 Ind. 332, 75 N. E. 655, 2 L. R. A. (N. S.) 244 with case note, 6 A. & E. Ann. Cas. 772, with note at 775, is a similar decision, although the court in its reasoning went further than the California court in the *De Lemos* case and evidently considered the order for a change in the custody of a child self-executing. See, Note, 2 L. R. A. (N. S.) 245. In that respect the decision is opposed to *Ex parte Queirolo,* supra. As to self-executing judgments, see 4 C. J. S., Appeal and Error, 1113, § 632; 3 Am. Jur., Appeal and Error, 198, § 540. It is unnecessary for us to express an opinion upon that particular phase of the question at

this time. It is sufficient to say that, since the minor child in this case was, on the day that the notice of appeal and undertaking were filed, in the actual custody of the father, to whom the Circuit Court had awarded the custody, and no proceedings are being taken or are needed to enforce the court's order, there is nothing upon which the undertaking can operate as a stay. Both the California and the Indiana decisions, as well as the implication of the *Vinton* case, support this conclusion.

The motion is denied.

Appeal from Circuit Court, Josephine County.

ORVAL J. MILLARD, Judge.

*L. S. James* and *Donald Coulter* argued the cause for appellant. On the brief were Coulter, James and Coulter, of Grants Pass.

*E. L. Mikesell* argued the cause for respondent. On the brief were Miller and Mikesell, of Grants Pass.

Before BRAND, Chief Justice, and HAY, LUSK, LA-TOURETTE and WARNER, Justices.

REVERSED.

HAY, J.

Appeal from an order modifying a decree of divorce by changing custody of the minor child of the parties.

On September 16, 1948, plaintiff, Jean Sakraida, commenced this suit. Her complaint charged the defendant, Edward Sakraida, her husband, with cruel and inhuman treatment, and prayed for a decree of divorce and for custody of the child of the parties, Johnny Sakraida, a boy, at that time aged two years. On September 28, 1948, Edward's default was entered and a hearing was had upon the complaint. At the con-

clusion of the hearing, the chancellor stated that he was perfectly willing to grant Jean a decree and to give her custody of the child, but that, for reasons which he stated, he would be obliged to leave open the matter of the child's support in order to give Edward an opportunity to be heard thereon. On February 8, 1949, Edward moved for an order vacating the order of default and giving him leave to answer. This was granted, and Edward thereupon filed his answer and cross-complaint, generally denying the allegations of the complaint, and praying for a decree of divorce in his favor on the ground of cruel and inhuman treatment, and for custody of the child.

Issue was joined upon the new matter. The case was heard on March 29 and 30, 1949, and on April 28, 1949, the court made findings of fact and conclusions of law in favor of Edward, and entered a decree of divorce in his favor, but awarding custody of the child to Jean.

On November 23, 1949, Edward filed a motion for an order modifying the decree so as to give him custody of the child. The motion was supported by his affidavit, in which he alleged that, since the date of the decree,

"the Plaintiff herein has entered into and is now living in open, notorious, illicit cohabitation with one Lou Varner, that under Plaintiff's custody, my said son, Jonny Sakraida, is being exposed and subjected to and associating with such environment that I have repeatedly been denied the right to visit with or have my said son, between the hours of 9:30 A. M. and 5:30 P. M. on Sundays; all in contemptuous disregard of the law and decree of the court in this case made, and to the detriment and corruption of the welfare and morals of my said son; * * *"

An order to show cause issued in due course, and, on December 14, 1949, a hearing was had upon the motion. Thereafter, the court made findings of fact to the effect that Edward is a fit and proper person to have custody of the child, and that Jean

"has been guilty of improper conduct as charged in the Affidavit and in contracting an adulterous marriage during her marriage relationship with the Defendant, * * * said second marriage in any event, having been attempted prior to the expiration of six months from the date of the entry of a decree of divorce hereinbefore made; * * *"

Appropriate conclusions of law followed, and, on January 16, 1950, the court made its order modifying the decree. Plaintiff appeals.

■■ It is hornbook law that upon a motion of this sort the court will not go behind the decree and retry the divorce case. Edward recognized this by basing his motion upon matters alleged to have taken place subsequent to the date of the decree, although the evidence of both parties at the hearing took a wider range. The movant is confined to the matters alleged in his motion and supporting affidavit. As to these he has the burden of proof. *Leverich v. Leverich,* 175 Or. 174, 180, 152 P. 2d 303. Jean was entitled to notice, by appropriate allegations in the motion and supporting affidavit, of all the grounds upon which Edward intended to rely. *Hurner v. Hurner,* 179 Or. 349, 357, 170 P. 2d 720.

It appears that about a week following the divorce hearing, and while the court still had the case under advisement, Jean went to Reno, Nevada, with one Lewis Varner, obtained a marriage license and went through a marriage ceremony with him, after which they returned to Oregon and cohabited as man and wife.

Jean, as a witness in her own behalf, strenuously contended on the hearing of the motion that it was her understanding that the decision of the court at the conclusion of the ex parte hearing on September 28, 1948, was that the divorce was granted, that she was awarded custody of the child, and that only the property settlement was to be left open. She testified that she was so informed by her attorney, and in addition she offered in evidence a news item in a Grants Pass newspaper of September 29, 1948, upon which she said she relied to some extent, as confirming her understanding of what her attorney had told her, which stated that an uncontested divorce decree had been granted to Jean from Edward Sakraida. She said further that at the time when she went through the marriage ceremony with Varner more than six months had elapsed since the date on which she erroneously supposed the court had given her a decree of divorce; that she did not know that she was not legally entitled to marry; and that she was not made aware of that fact until a few days before the hearing upon the motion.

Jean was present throughout the whole of the hearing of the contested divorce proceedings and testified as a witness therein. One would think that she must have been aware at that time of the character of proceeding which was before the court. However, on cross-examination in the hearing upon the motion, she stated: "When we were here last March I understood that that was just supposed to have been a property settlement and that he was trying to get the divorce away from me, * * *." She admitted signing a reply to her husband's answer in which she denied the matters of misconduct that he alleged against her in his cross-

complaint, but she said that she did so to "deny a lot of slander that was said about me, * * * I knew that he was trying to get my divorce away from me." Some suspicion is cast upon her claims of innocent unsophistication by the facts that in her application for a marriage license she stated untruthfully that she was a resident of Winnemucca, Nevada, that she had not previously been married, and that her name was Jean Richards (which, however, was her maiden name). On the whole, we think that, if she believed that a divorce decree was entered upon the ex parte hearing, she was incredibly naive.

■■ It does not follow, however, that she should lose custody of the child. Our decisions recognize the general rule under which, in awarding custody of young children, preference is given to the mother, unless she is grossly immoral or has abused or grossly neglected the children. *Layton v. Layton,* 174 Or. 463, 469, 149 P. 2d 574; *Norcross v. Norcross,* 176 Or. 1, 4, 5, 155 P. 2d 562. The welfare of the children is the primary consideration. *Leverich v. Leverich,* supra, 175 Or. 174, 177, 152 P. 2d 303. There was ample proof in the record before us that Jean has given her child the care that a good mother should give.

■ Moral unfitness disabling a mother from being a fit and proper person to have custody of her child is not established by the evidence that she went through a form of marriage under the belief that she had been legally divorced from her husband when in fact she had not been. *Commonwealth v. Yarnell,* 313 Pa. 244, 169 A 370, 373; *Holmes v. Holmes,* 82 Ohio App. 33, 80 N.E. 2d 507; *Templeton v. Templeton,* 254 Wis. 92, 35 N.W. 2d 223, 224; *Jensen v. Jensen,* 168 Wis. 502, 170 N.W. 735, 736.

■ But even if Jean was aware that she was not free to marry, and therefore was guilty of wilful adultery in going through a form of marriage with Varner, there is no absolute rule that she was thereby rendered morally unfit to have custody of her children. 2 Nelson, Divorce and Annulment, 2d ed., § 15.06, notes 55 and 56; *Cooke v. Cooke,* 67 Utah 371, 248 P. 83, 102; *Haskell v. Haskell,* 152 Mass. 16, 24 N.E. 859. The best interests of the child are still the criterion to which the court should adhere, and, under all the circumstances, we feel that this child should be left in the care of his mother.

The trial court, in a memorandum opinion, stated that it appeared that plaintiff's second marriage was adulterous as a matter of law, and that to deny the motion for modification of the decree would constitute reversible error, citing *Mills v. Mills,* 47 Or. 246, 83 P. 390. In *Mills v. Mills,* the evidence was that there had been an adulterous liaison between plaintiff mother and her paramour so flagrant and notorious as to have been a public scandal. There is no parallel between the facts of that case and those of the case at bar.

■ In our opinion, Edward failed to make satisfactory proof of his allegation that he had been denied reasonable access to the child. There was, we feel, evidence of some lack of proper cooperation on the part of both parties in this regard. Edward is entitled to reasonable—but not to unreasonable—access. It is Jean's duty to see to it that reasonable access is not denied him. A serious failure in this respect may result in her being deprived of custody. *Norcross v. Norcross,* supra, 176 Or. 1, 6, 155 P. 2d 562.

The order appealed from is reversed, with costs.