Argued September 18, reversed with directions October 10, 1951

# GOLDSON *v.* GOLDSON
## 236 P. 2d 314

*Robert A. Leedy* argued the cause for appellant. On the brief were Barzee, Leedy & Keane, of Portland.

*Clifford S. Beckett* argued the cause for respondent. On the brief were Butler, Jack & Beckett, of Oregon City.

Before HAY, Acting Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a proceeding for the modification of a decree of divorce respecting the custody of minor children. The motion of Fannie L. Goldson, as plaintiff, to modify such decree was denied by the trial court. Plaintiff appeals.

On December 30, 1947, the circuit court for Multnomah county, in a suit wherein Fannie Lorraine Goldson is the plaintiff, and Paul W. Goldson is the defendant, entered a decree of divorce in favor of defendant and against plaintiff which, in part, provided as follows:

"FURTHER ORDERED, ADJUDGED AND DECREED, That it is to the best interest of the minor children that the permanent care, custody and control of the said minor children, namely, Margaret Ann, Cherly [sic] Jeane, and John Paul Goldson, be and the same is hereby granted to and vested in the defendant with the obligation and the duty of the defendant to provide and care for said minor children and the plaintiff is hereby granted the right and privilege of reasonable and seasonable visitation of said children and with the permission to have said children with her at reasonable times that will not interfere with the welfare of the children, and it is

"FURTHER ORDERED, ADJUDGED AND DECREED, That the children should be kept in one home and that the defendant should make such provision for said children  *  *  *."

From that decree plaintiff appealed to this court. *Goldson v. Goldson,* 187 Or. 206, 210 P. 2d 478. With one exception to be hereafter noted, the decree of the trial court was affirmed.

At the time the original decree was entered, Margaret Ann Goldson was eight years of age; Cheryl

Jeane Goldson, six years of age; and John Paul Goldson, five years of age. Margaret Ann is the daughter of plaintiff, the issue of a prior marriage, and also the adopted daughter of defendant. Cheryl Jeane and John Paul are the issue of the marriage between plaintiff and defendant.

In affirming the decree of the trial court, we said in *Goldson v. Goldson,* supra:

"The decree appeals to us as just in all of its phases, with possibly one exception. The defendant is not the natural, but the adoptive, parents [sic] of the oldest of the three children who, the uncertain testimony of the plaintiff indicates, has lived with her part time since the plaintiff departed from the family home. It may be that the attacked decree should be modified by giving the plaintiff the custody of that child. We do not know. No modification should be made concerning this child in order to benefit the plaintiff, but, in the event that a modification would promote the welfare of the child, it should be made. However, nothing should be done unless it satisfactorily appears that the improvement in the plaintiff's language, which some of the witnesses mentioned, has become permanent, and even then the modification should not be made unless it also appears that since she left the home the plaintiff has bestowed upon this daughter the care, attention and affection which mothers commonly bestow upon their offspring.

"The cause is remanded to the Circuit Court for the purpose of conducting an inquiry of the kind just mentioned, and for the further purpose of making a modification if the facts warrant it."

This decision was handed down October 18, 1949, or practically two years following the entry of decree in the trial court. Before, as well as at the time of, the entry of the original decree, temporary custody of

all said minor children was in plaintiff, pursuant to order of the court. Also, during the time the case was on appeal and until November 29, 1949, said children remained continuously in plaintiff's custody.

On November 1, 1949, plaintiff filed in said trial court her motion, supported by affidavit, for a modification of said original decree respecting the custody of said children, alleging that since the entry of the decree on December 30, 1947, there had been a substantial change in circumstances and conditions, outlining the same, and that the best interests of said children demanded that their custody and control be awarded to her. On November 28, 1949, the said motion came on for hearing and by oral stipulation in open court there was combined with it the inquiry suggested in the aforesaid decision of this court. Upon such hearing several affidavits were filed by the plaintiff and oral testimony adduced by both parties.

The trial court upon the conclusion of said hearing entered of record its order and decree which, in part, reads:

"ORDERED, ADJUDGED AND DECREED that the decree of the Court heretofore made and entered on December 30, 1947, be and the same is hereby in all respects affirmed, and it is
"* * *

"FURTHER ORDERED, ADJUDGED AND DECREED: That the motion to modify the decree heretofore made and entered on December 30, 1947, be and the same is hereby denied, and it is
"FURTHER ORDERED, ADJUDGED AND DECREED: That the plaintiff deliver forthwith to the defendant, at the defendant's residence at Jennings Lodge, Oregon, which residence is the place where the parties heretofore made their home, the persons and possessions of Margaret Ann Gold-

son, Cheryl Jeane Goldson, and John Paul Goldson, and it is

"FURTHER ORDERED, ADJUDGED AND DECREED: That the plaintiff have the right to reasonable and seasonable visitation to see the children and also to have the children with her at reasonable and seasonable times with full regard to the welfare of the children being first considered * * * ."

Pursuant to the terms of this order, plaintiff forthwith delivered custody of said minor children to defendant, and since the date thereof the defendant has had and now does have such custody.

The Jennings Lodge residence mentioned in the order was then owned by plaintiff and defendant as tenants in common. At the time defendant's mother was living with and keeping house for him. She was then 68 years of age, though the evidence indicates she was in good health. Defendant was employed at the Crown Zellerbach plant in Oregon City. Therefore, upon the delivery of the custody of said children into the hands of defendant, the major part of the responsibility for their care, control, and training devolved upon defendant's aged mother, particularly during defendant's absences while at work.

For approximately 18 months immediately prior to said hearing, the children, with their mother, had resided at Scottsburg, in Douglas county. They lived in the home of Emma Hedden, an aunt and the adoptive sister of plaintiff. Miss Hedden operated a store in Scottsburg and for 35 years had served as postmistress there. The record indicates that she is a refined woman of substantial means and a leader in civic affairs. To pay for the support of herself and the children, plaintiff kept house for the family, occasionally working in the

store. In passing, we take cognizance of the fact that during this period of time defendant did not contribute a thing toward the support of said children.

In the proceeding now before us plaintiff states that following the entry of the original decree there occurred a very decided change for the better in her mode of living, in her habits, and in her care of her children. In particular, she claims that there has been a decided improvement in her conduct as respects those matters in which she had been found deficient on the original trial. She contends that during this period of approximately two years, when, in a sense, she was on trial, she conclusively demonstrated her reform in conduct and her fitness to have the care and custody of her children. She asserts that this two-year period of actual care and custody of her children presents such a change in circumstances and conditions following the entry of the original decree as to warrant a modification thereof; that the best interests of said children demand that they have a mother's care; and that their permanent custody be awarded to her.

We have repeatedly held that a decree of divorce as respects the care and custody of minor children is res judicata as to what is for their best interests at the time of such decree, and that an award of custody will not be disturbed unless there is a subsequent change in circumstances and conditions warranting a modification. We have also held in cases too numerous to mention that, in every proceeding involving the custody of minor children, the polar star principle guiding the court in its final determination is the best interests and welfare of the child. All other considerations are secondary.

What constitutes a change in circumstances and con-

ditions justifying a modification of a decree of divorce fixing the custody of minor children must be decided in each case as it arises. There is no fixed standard that will apply to all situations. Keeping in mind the principal consideration in all such applications for modification, that is, the best interests of the child, there might be some changes in conditions of a substantial character that would not warrant modification, while in other situations very slight changes might be deemed sufficient.

In the instant case it is apparent the trial court was of the opinion that before a modification of the decree was warranted, the evidence must necessarily show that there had been a change in circumstances and conditions as respected defendant's situation, he having been awarded custody by the original decree. Respondent urges that contention here. In his brief he states that such a modification is based upon three fundamentals, viz.:

"a. That the party seeking the change, if previously found at fault, can show a satisfactory reform and rehabilitation.

"b. *That there has been a change of circumstances as to the fitness of the custodian to care for the minor children of the parties.* (Italics ours.)

"c. That there must be a showing that the children will be benefited by the change of custody."

■ Manifestly, one seeking to secure the custody of minor children must show that he or she is a fit and proper person to have such custody. But basically this requirement is simply another way of saying that in all cases the welfare of the children is the primary consideration. It is obvious that it would be inimical to their welfare to place their custody in the hands of

an unfit and improper person. Where the question of reform and rehabilitation arises in connection with the determination of fitness, it is, of course, important, but only in arriving at a correct solution of the primary problem.

Naturally, there should be no change in custody unless it will benefit the children, which also is but another way of saying that in all cases the welfare of the children is the paramount consideration.

But what may be for the best interests of the children is not necessarily determined by the fitness of the original custodian to retain custody. That enters into consideration, of course, but proof of his or her unfitness is not essential as a prerequisite to a change in custody.

In support of his theory that no change in custody should occur unless the original custodian is proved to be an unfit person to retain it, respondent invites our attention to *Merges v. Merges,* 94 Or. 246, 254, 186 P. 36. In that case, we said:

> "The order of February 3, 1913, therefore, granting the exclusive custody of the son to his father, the defendant, was final and conclusive in the absence of an appeal therefrom and can be changed or superseded only by a showing that for some reason the father is not competent to care for the child or that some condition has arisen rendering his further care and custody by the father inimical to the child's welfare."

As applied to the facts in that particular case, the foregoing was a correct statement of the law. However, a careful reading of the entire opinion will disclose that the court did not intend by such statement to lay down a hard and fast rule, applicable to all cases, that it is necessary in order to secure a change of cus-

tody to prove unfitness or incompetency of the original custodian.

The true rule is aptly expressed by Mr. Justice HAY, speaking for the court, in *Kellogg v. Kellogg,* 187 Or. 617, 621, 213 P. 2d 172, as follows:

> "The divorce decree in the present case, however, gave custody to plaintiff. Before any change in custody is made, it must be shown that, since the entry of the decree, there has been a change in conditions affecting the welfare of the child, and that the proposed change in custody would be for the child's best interests."

See also *Jenkins v. Jenkins,* 184 Or. 525, 198 P. 2d 985; *Leverich v. Leverich,* 175 Or. 174, 179, 152 P. 2d 303; 17 Am. Jur., Divorce and Separation, 518, § 684; 27 C.J.S., Divorce, 1188, § 317 (b).

■ In other words, in considering whether there has been a change in conditions warranting modification, the test is whether such conditions affect the welfare of the child and what such child's best interests demand.

In 27 C.J.S., Divorce, 1188, § 317 (b), we find the rule stated:

> "To justify a substantial modification of the decree awarding custody of the children, there must be shown a change of circumstances * * *. The welfare of the child is the controlling consideration, and whenever it is shown that it is best for the welfare of the child that it be transferred from the custody to which it was awarded, the court will in its discretion modify the decree; otherwise modification is properly denied."

■■ It is a well-established rule in this state that in divorce proceedings children of tender years should be awarded to the custody of their mother, unless she is

morally unfit. In *Baier v. Baier,* 172 Or. 83, 87, 139 P. 2d 562, the rule is stated thus:

"In divorce proceedings, children of tender years, *more especially girl children,* should be awarded into the custody of their mother, notwithstanding the fact that she is the losing party, unless she is morally unfit." (Italics ours.)

The moral unfitness of a mother sufficient to deprive her of custody must be such as to have a direct bearing upon the welfare of her child. It is not for every act of indiscretion or immorality that she will be denied custody. The test is whether her conduct is so depraved, immoral, and wicked that to permit her child to remain in her custody would be injurious to its best interests. The rule applicable is well stated in the late case of *Sakraida v. Sakraida,* 192 Or. 217, 233 P. 2d 762, 764:

"Our decisions recognize the general rule under which, in awarding custody of young children, preference is given to the mother, *unless she is grossly immoral or has abused or grossly neglected the children.*" (Italics ours.)

In 17 Am. Jur., Divorce and Separation, 518, § 684, it is stated:

"A decree made at the time of the divorce cannot anticipate the changes which may occur in the condition of the parents or in their habits, character, and fitness to have the custody and care of the children. * * * These changes and other sufficient causes may make it necessary for the good of the children that their custody be changed. * * * *Moreover, a delinquent parent may in the course of time become entirely fit to have and retain the custody of his or her child.* So, it has been held that the presumption of unfitness on the part of a father for the custody of his child, raised by refusal

of the court to award it to him upon granting a decree of divorce against him, is overcome by evidence of an exemplary life for many months after the passing of the decree." (Italics ours.)

In *Ruch v. Ruch,* 183 Or. 240, 244, 192 P. 2d 272, this court, speaking through the late Mr. Justice BELT, said:

"Until this divorce decree was rendered, the defendant had always had the care and custody of her child. She was a good mother. The record is replete with evidence of her undying love and devotion for her baby. We are not unmindful that the father also loves his boy and that the paternal grandparents—with whom the boy is now living—have great affection for him. *The child, however, is a part of the flesh and blood of the mother.* It is she who brought this little fellow into the world, and, in our opinion, is entitled to his custody. Courts will not deprive a mother of the custody of a child of tender age, unless it is clearly shown that she is morally unfit to have it. *The mother in the instant case has shown true repentance for her 'act of indiscretion'* [adultery]. *She should not be forever condemned."* (Italics ours.)

When the divorce decree was entered, plaintiff was denied permanent custody of her children, because the testimony indicated she had been an extremely untidy housekeeper, had used filthy, vulgar language, and, to a certain degree, neglected her children, which misconduct at the time rendered her unfit, in the court's opinion, to have such custody.

It was never seriously contended that she did not love her children with a mother's love, and it is abundantly clear from the record that she did. Also, she had their custody during their entire lives up to the

date of the order from which the present appeal is prosecuted.

On the hearing in the trial court in the instant proceeding the overwhelming weight of the evidence showed that plaintiff had definitely overcome her deficiencies in conduct, particularly, in so far as the use of filthy and vulgar language is concerned. An attempt was made to show that she still used some profane language, but that testified to was not of a filthy or vulgar nature. And even that evidence related largely to the time plaintiff lived in Portland immediately preceding and following the entry of the decree of divorce.

In support of her contentions in this case plaintiff produced a large number of witnesses. We will name and briefly summarize the testimony of each:

Floyd Spence, millwright, Scottsburg: Has five children of his own; plaintiff kept house in Hedden home; house kept clean; children of plaintiff well and neatly dressed and of excellent behavior; plaintiff's conduct excellent; plaintiff served as 4-H Club leader, conducted a cooking class; took active part in Christmas festivities.

Dorothy Spence, wife of Floyd: Visited with plaintiff in the Hedden home; house kept clean; cooking good; children neat and well cared for.

Jacob E. Seabloom, superintendent, E. K. Wood Lumber Company: Children average; plaintiff's conduct above reproach.

Charlie Leslie Beck, school bus driver: Transported children 16 miles each school day to school; "three of the nicest dressed youngsters on my bus"; normal behavior.

Ronald Smith, garage and service station operator: Children of his own; Goldson children healthy and

happy; house kept up in good shape; plaintiff active in 4-H Club work.

Mrs. Theodore Andrews, Sunday school teacher: Plaintiff kept house properly; was leader in 4-H Club, also in Christmas and other programs; exhibited fine attitude toward her children; took children to Sunday school; plaintiff taught Sunday school class during absence of regular teacher; Cheryl and Johnny Goldson in Mrs. Andrews' Sunday school class; they were well behaved, neat, and clean.

G. E. Nikander, minister of the gospel: Goldson children at Sunday school regularly; plaintiff led Sunday school class for a time; plaintiff helped in special singing; children well dressed, well behaved, and normal; plaintiff a good housekeeper and mother.

Mary Nikander, wife of G. E. Nikander: Corroborated her husband's testimony. She testified:

"Q. Do you regard Mrs. Goldson as a good mother?

"A. Yes, I do; she loves her children.

"Q. And how do they feel about her as far as you are able to observe?

"A. They love her, too."

In addition to the above witnesses, both Miss Hedden and plaintiff testified. Furthermore, there were submitted to the court a number of affidavits by persons who did not attend in person upon the hearing. As typical of these affidavits, we set forth that by Lydia Roe:

"I, LYDIA ROE, being first duly sworn, depose and say that I reside at Scottsburg, Oregon, where my husband and I operate Roe's Store; I have known Fannie L. Goldson since June, 1948, when she returned to Scottsburg with her children to live; I have participated with Mrs. Goldson in numerous

community activities and have frequently observed her with her children; she spends far more time with her children than does the average mother and takes a keen interest in their welfare; in fact, the children appear to be Mrs. Goldson's chief interest in life; she is a loving and devoted mother, and is well regarded in the community; the children obviously return her affection and regard.''

To the same effect are the affidavits of Hazel Norris, housewife; Gard Sagaberd, farmer; Dale T. Waddill, school principal; Francis Leathers, schoolteacher; June Hudson, schoolteacher; Emma Conger, schoolteacher; Ray E. Rookard, school bus operator; Stanley Karejwa, schoolteacher; H. M. McCabe, chief of police at Reedsport; Roscoe Fryer, second cousin of plaintiff; and Helen Miller, housewife. All of these affidavits were filed in this cause on November 15, 1949, or two weeks prior to the hearing. It is noted that no counter-affidavits were filed in opposition thereto.

On the hearing no attempt was made to controvert the testimony respecting plaintiff's conduct during the 18 months in which she lived in Scottsburg. Aside from the testimony of defendant, which was almost wholly confined to the alleged difficulties he experienced in visiting his children at Scottsburg, there was very little, if any, testimony affecting plaintiff's fitness to have the custody of her children that related to any time following the month of December, 1947.

■ It clearly appears from the overwhelming weight of the evidence before us that whatever faults plaintiff had in the past which affected her fitness to care for her children have been corrected, and that she is a fit and proper person to have their care, custody, and control; their best interests and welfare demand that same be awarded to her.

We must remember that two of these children are girls, and both are now of an age when they definitely need a mother's care and guidance. There is no other tie on earth like that between mother and child. Every child of the age of the respective children involved here is entitled to his or her mother's love and care, and it is only in cases of gross misconduct, neglect, or abandonment on the part of the mother that the courts are willing to destroy that tie. A grandparent, no matter how capable or how much interested, cannot take the place of a mother. In the words of Edgar Allan Poe:

> "* * * in the Heavens above,
> The angels, whispering to one another,
> Can find, amid their burning terms of love,
> None so devotional as that of 'Mother' * * *."

The decree of the trial court is reversed and this cause remanded with directions to enter a decree modifying the original decree of divorce and awarding the permanent care, custody, and control of said minor children to plaintiff, with the right of reasonable visitation preserved to defendant; it is further directed that the trial court conduct a hearing for the purpose of determining the amount of money defendant should contribute each month toward the care and support of said children.

Neither party shall recover costs herein.