Argued October 13, affirmed as modified October 10, 1951

# PACHKOFSKY *v.* PACHKOFSKY
## 236 P. 2d 320

*Clarence A. Potts* argued the cause for appellant. On the brief were Potts & Davidson, of Portland.

*William K. Shepherd,* of Portland, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

TOOZE, J.

This is a suit for divorce brought by Margie H. Pachkofsky, as plaintiff, against Benjamin Pachkofsky, as defendant. The trial court entered a decree granting

a divorce to defendant, awarding the custody of a minor child to defendant's sister, fixing the property rights of the parties, and allowing attorney's fees to plaintiff. From this decree plaintiff appeals; from the provisions of the decree respecting property rights and attorney's fees, defendant cross-appeals.

Plaintiff and defendant were intermarried at Vancouver, Washington, February 10, 1944. One child, Donald Stephen, was born on March 13, 1946, as the issue of this marriage. As the issue of a prior marriage, there was born to plaintiff a daughter named Bonnie B. Lynch, aged seven years at the time this suit was commenced. Bonnie lived with plaintiff and defendant.

In her complaint plaintiff charges defendant with certain acts of cruel and inhuman treatment. By his answer defendant denies these allegations of wrongdoing on his part, and by way of cross-complaint charges plaintiff with cruel and inhuman treatment in certain respects as alleged, and by supplemental cross-complaint accuses her of adultery. By her reply plaintiff denies all such alleged misconduct on her part.

Upon the trial witnesses were called by both parties to substantiate their respective claims. Before us are 757 typewritten pages of testimony produced in the trial court. We have examined this transcript with care.

Upon the conclusion of the trial the court entered the following decree (omitting formal parts):

> "(1) That the bonds of matrimony and marriage contract heretofore and now existing between the plaintiff and the defendant be and the same hereby are dissolved and held for naught, and that the defendant be and he hereby is awarded a decree of absolute divorce from the plaintiff.

> "(2) That the care, control and custody of Donald Stephen Pachkofsky, the minor child of the

parties, be and the same is awarded to Esther Austad, a sister of the defendant.

"(3) That the defendant pay to the said Esther Austad for the support and maintenance of the said Donald Stephen Pachkofsky the sum of Fifty Dollars ($50.00) per month each and every month hereafter until said minor child reaches the age of twenty-one (21) years, or until the further order of the Court, and that the said defendant pay, in addition thereto, for all necessary medical care and attention for said minor child.

"(4) That the plaintiff deliver the said Donald Stephen Pachkofsky to the said Esther Austad forthwith.

"(5) That the plaintiff and defendant may each visit the said Donald Stephen Pachkofsky at reasonable and seasonable times, and the plaintiff may have the said Donald Stephen Pachkofsky visit her every other weekend, this including over-night.

"(6) That the plaintiff and defendant are each awarded an undivided one-half interest as tenants in common in and to the following described property, situated at 8402 S. E. LaFayette Street, in Portland, Multnomah County, Oregon, subject, however, to a contract of sale, and subject to the sum of Sixteen Hundred Dollars ($1600.00) hereinafter mentioned, said real property being more particularly described as follows, to wit: [Here follows description of property by metes and bounds.] That the plaintiff shall receive the next $1600 received on said contract on account of moneys loaned to her personally, on which loans the defendant is not liable, and thereafter all further payments or proceeds received on account of said property shall be divided equally between plaintiff and defendant, as collected, one-half to each.

"(7) That plaintiff and defendant are each awarded an undivided one-half interest as tenants

in common in and to the following described real property, to-wit:

"Tract Number Twenty-five of Macleay's Skyline Homes, within the County of Multnomah and State of Oregon.

"(8) That the plaintiff and defendant are each awarded his or her own clothing and personal effects, and the plaintiff and defendant are each awarded such items of household goods and furniture which may now be in his or her respective possession.

"(9) That the plaintiff have judgment and decree against the defendant in the sum of Two Hundred Fifty Dollars ($250.00) on account of her attorney's fees herein, the said sum of $250.00 being in addition to the sum of $100.00 heretofore paid by the defendant on account of the plaintiff's attorney's fees under the order of the Court in the above entitled cause made and entered on the —— day of April, 1949.

"DONE AND DATED this 26th day of April, 1950."

■ No useful purpose will be served by discussing the evidence in detail. Suffice it to say that with one important exception to be hereafter noted, there is substantial evidence in the record respecting some of the charges contained in the original answer which, if believed, will justify the decree entered by the trial court. The trial judge heard the testimony, observed the conduct and demeanor of the witnesses while under examination and, by reason thereof, was in much better position to judge the truth than are we, confined as we are to the reading of the cold record before us. However, that does not mean that we are entirely free from doubt, because we are not; yet under all the circumstances of this particular case, we are of the

opinion that that doubt should be resolved in favor of the decree in so far as it is possible.

■ The part of the decree which has given us most concern is that respecting the custody of the minor child of the parties. It will be noted that such custody is awarded to defendant's sister. The evidence discloses beyond question that Esther Austad, wife of Lawrence Austad and the mother of two girls aged twelve and seven respectively, is a woman of splendid character, in every way a fit and proper person to have the custody of any child. But that does not mean she is entitled to or should have custody of the child involved in this litigation.

The evidence discloses that, at the time of trial this child was in poor health, then suffering from rheumatic fever. He had not been well for a considerable period of time prior to trial. The overwhelming weight of the evidence shows beyond any peradventure of doubt that plaintiff is devoted to this child and at all times has given it excellent care. The child has never been away from her since its birth. Although she labored under very trying circumstances at times, plaintiff never forgot her duty as a mother. No serious attempt was made to show any neglect of her child on her part; in fact, defendant himself admitted she gave him good care. Neighbors who were called as witnesses by defendant spoke well of the care bestowed upon her children by plaintiff. We quote briefly some of that testimony.

William Mauk, who lived within 400 feet of the home of plaintiff and defendant, testified:

"Q. You have seen Mrs. Pachkofsky around the children, haven't you?

"A. Yes.

"Q. How did she treat them?

"A. Good.

"Q. Were the children always clean?

"A. Yes."

Conrad Heinrich, another neighbor, testified:

"Q. Did you say you ate cake there occasionally?

"A. Yes, I have.

"Q. Good cake?

"A. Yes, it was.

"Q. Home made cake?

"A. Helen made the cake.

"Q. How does she treat the children?

"A. Very good."

The evidence also discloses that Esther Austad never visited in the home of plaintiff and defendant, nor did plaintiff ever visit in the Austad home, though all the parties lived either in or near Portland. Esther Austad is a perfect stranger to this little fellow.

■ We are not unmindful of the single act of misconduct charged against plaintiff as having been committed several months after this divorce suit was commenced. We have carefully read all of the evidence pertaining thereto. There was an explanation by plaintiff which is entirely consistent with innocence. She was corroborated. Yet it is unnecessary for us here to express an opinion whether her version of the incident or that of the defendant is true.

It is sufficient to say that, even if it be assumed the incident occurred just as claimed by defendant, it does not necessarily follow that by reason thereof plaintiff was automatically rendered unfit to have the custody of her child, nor that the child's welfare will be promoted by denying her custody.

■ Our paramount consideration is the welfare of this baby. The evidence before us is conclusive that no act of plaintiff's ever had any injurious effects in so far as the welfare of this little boy is concerned. In all cases where misconduct on the part of a mother is claimed as reason for denying her custody of her child of tender years, the test is whether such wrongdoing had any direct bearing upon the welfare of the child and to its injury.

■ Can it be seriously contended that this child's welfare will be promoted by taking him from a devoted mother, whose love, care, companionship, and guidance he has enjoyed since birth, and turning him over to a comparative stranger, be such stranger ever so capable? We think not.

■ In the late case of *Sakraida v. Sakraida,* 192 Or. 217, 233 P. 2d 762, 764, this court, speaking through Mr. Justice HAY, said:

"Our decisions recognize the general rule under which, in awarding custody of young children, preference is given to the mother, *unless she is grossly immoral or has abused or grossly neglected the children.*" (Italics ours.)

See also *Goldson v. Goldson,* 192 Or. 611; *Ruch v. Ruch,* 183 Or. 240, 244, 192 P. 2d 272.

■ As to those provisions of the decree of the trial court fixing the property rights of the parties, we find substantial evidence in the record to support these. In *Shields v. Bosch, Executor,* 190 Or. 155, 159, 224 P. 2d 560, we said:

"Under § 9-912, O.C.L.A., as amended by ch. 557, Or. Laws, 1947, the trial court is given a broad discretion in the disposition of property rights as an incident to the dissolution or annulment of a marriage contract. The primary responsibility of

making a just disposition rests upon the trial judge, and as pointed out before, his final determination should not be disturbed on appeal unless it can be said that he has been guilty of a manifest abuse of discretion."

We find no such abuse of discretion in this case.

Defendant objects to that portion of the decree allowing additional attorney's fees in the sum of $250.

On April 28, 1949, the trial court upon motion of plaintiff entered an order which, in part, reads as follows:

"ORDERED that defendant pay forthwith to plaintiff the sum of $100.00 to apply on her attorney fees in the above entitled cause, and the further sum of $24.25 as her actual costs of suit thus far incurred herein."

No other order respecting the allowance of attorney's fees was made or entered of record prior to final decree. During the course of the trial, just before plaintiff rested, the following stipulation was entered into between counsel:

"MR. POTTS: Now, Mr. Shepherd, will you stipulate with me that the Court may set the attorney fee in this case for the plaintiff without putting on any testimony as to the reasonable value?

"MR. SHEPHERD: Yes, I will stipulate that."

Section 9-913, O.C.L.A., as amended by ch. 142, Oregon Laws 1945, provides, in part, as follows:

"After the commencement of a suit, *and before a decree therein,* the court, or judge thereof, may, in its, or his, discretion, upon proper showing of the necessity therefor, *provide by order* as follows: (Italics ours.)

"1. That the husband pay, or secure to be paid, to the clerk of the court, such amount of money as may be necessary to enable the wife to prosecute or defend the suit, as the case may be  *  *  *."

■ The divorce court, being a court of limited jurisdiction, can exercise no power other than that expressly conferred upon it by statute. The foregoing provision of the statute is the only authority the court, or judge thereof, has respecting the allowance of money necessary to enable the wife to prosecute or defend the suit; this includes the power to allow attorney's fees when necessary.

■ However, under the express wording of the statute, it is mandatory that whatever allowances are made must be made prior to final decree. They cannot be made for the first time in the final decree itself. If fixed by order duly made and entered of record prior to final decree, such sums may be incorporated into the final decree if at the time of the rendition thereof they remain unpaid. *Carlton v. Carlton,* 156 Or. 33, 37, 65 P. 2d 1417; *Aldrich v. Aldrich,* 129 Or. 111, 113, 276 P. 267; *Thomsen v. Thomsen,* 118 Or. 614, 621, 228 P. 832, 245 P. 502, 247 P. 808; *Hengen v. Hengen,* 85 Or. 155, 164, 166 P. 525.

We see no reason for this requirement, but that is a legislative and not a judicial question. We have no authority to rewrite the statute.

The stipulation in question did not provide that the trial court might determine the amount reasonable as attorney's fee and incorporate the same into the final decree. It was no more nor less than an agreement that the court might fix the fee without any evidence being offered as to reasonable value of the services performed. It was in no sense a waiver of

the specific requirement of the statute that the court fix the fee by order before final decree.

■ It is true that the trial judge in a memorandum opinion respecting the issues in the case written prior to final decree, among other things, stated the following:

> "The Court finds that the sum of $250.00 in addition to the sum heretofore paid is a reasonable sum to be allowed to plaintiff for attorney's fees herein."

■ However, this memorandum was not an order of the court, nor filed as such. For us to interpret it as an order would be to establish a dangerous precedent.

That part of the decree providing for additional attorney's fees is void and of no effect.

It follows from what has been said that the decree of the trial court should be, and the same hereby is, modified by striking therefrom subdivisions numbered (2), (3), (4), and (5) thereof and substituting therefor the following:

The permanent care, custody, and control of Donald Stephen Pachkofsky, minor child of plaintiff and defendant, be, and the same is, awarded to plaintiff. Defendant shall have the right of reasonable visitation.

Defendant shall be, and he is, required to pay to plaintiff the sum of $50 per month toward the care and maintenance of said minor child and, in addition thereto, pay for all necessary medical care and attention rendered said child.

Except as herein modified, the decree is affirmed.

Plaintiff is entitled to costs and disbursements.