Argued December 17, affirmed as modified December 23, 1952

# PICK *v.* PICK

251 P. 2d 472

*John D. Galey* argued the cause for appellant. On the brief were T. M. Morris, of Corvallis, and Galey & Galey, of Sweet Home.

*W. W. McKinney,* of Salem, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LATOUR-ETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit for divorce, instituted by Carol Pick, as plaintiff, against Richard C. Pick, as defendant. Plaintiff by her complaint charged defendant with cruel and inhuman treatment. Defendant answered, denied the material allegations of the complaint, and affirmatively charged plaintiff with cruel and inhuman treatment, praying a decree of divorce in his favor. Each party prayed to be awarded the custody of their minor child. The trial court entered a decree dismissing plaintiff's complaint, awarding a decree of divorce to defendant, and granting custody of the child to Bessie S. Pick, the mother of defendant. Plaintiff appeals.

Upon the oral argument in this court, plaintiff abandoned her appeal insofar as the decree of divorce is concerned, asking relief only from that part of the

decree relating to the custody and support of the child. No property rights are involved.

Plaintiff and defendant were married at Toledo, Oregon, on September 27, 1947. Plaintiff was born and reared in Toledo and, with the exception of two short periods of time, has resided there all her life. On October 22, 1948, at Medford, Oregon, a daughter, Margaret Joyce Pick, was born as the issue of the marriage between plaintiff and defendant.

Carl McCalflin and Ethel McCalflin are the father and mother, respectively, of plaintiff. For more than 29 years they have been residents of Toledo. They own and operate an apartment house at Toledo, and also cabins for rental. They are substantial people and are well-to-do financially.

William Pick and Bessie S. Pick are the father and mother, respectively, of defendant. They have resided in Toledo for more than 12 years. They own their own home and enjoy a good standing in the community. Mr. Pick was formerly engaged in the fuel business, but at the time of trial he "was not doing much except to care for buildings and haul lumber." They have reared seven children, five boys and two girls, all of whom, except the youngest son, have left home.

After the marriage of plaintiff and defendant the parties lived for about three months with plaintiff's parents at Toledo. They then moved to Medford, where they lived with friends of defendant. Finally, when defendant obtained employment, they moved into a trailer house which had been purchased for their use by defendant's sister, and continued to reside therein until they left Medford.

On approximately November 1, 1948, when their daughter was about two weeks old, the parties returned

to Toledo. For the first two weeks after their return, they made their home with defendant's parents. They then moved to the home of plaintiff's parents. Shortly thereafter they moved into one of the McCalflin apartments, and later into one of the cabins. Through the assistance of plaintiff's father, defendant obtained employment. For approximately a year he earned a wage of $500 per month. The McCalflins did not require the payment of any rental upon either the apartment or the cabin.

Plaintiff and defendant, with their minor daughter, continued to live together in the McCalflin cabin until the month of May, 1950, when defendant left the home. Since that time the parties have not lived together as husband and wife. Defendant enlisted in the United States Navy in July, 1950. He plans to make that his career.

With the exception of a short time when she was working as a domestic in a home at Bend, and for a period of about four weeks while employed in Portland, plaintiff lived, and at the time of trial was living, with her parents at Toledo. The child has been in her custody and with her continuously since its birth, even while she was employed away from home. Plaintiff's parents have assisted in the support of plaintiff and her child and expressed a willingness to continue that aid. Since October, 1950, plaintiff has received $40 per month as an allotment out of defendant's service pay.

As a part of his separate answer and cross-complaint, after charging plaintiff with cruel and inhuman treatment, defendant alleged as instances thereof the following:

"That said plaintiff did commit adultery with

one Harold C. Oleman on the following dates and places:

> "Sweet Home, Oregon, on June 18, 1950; near Hoskins, Oregon, on July 1 and 2, 1950; at Portland, Oregon, on August 11, 1950; at Portland, Oregon, on August 23 and 24, 1950; at Motel on Oak Street, between Portland and Oregon City on August 26, 1950; at Clifton Motel, between Portland and Oregon City, on September 1, 1950; at Motel on Oak Street, between Portland and Oregon City, on September 2, 1950; at Portland on September 3, 1950; and at Atlasta Motel near Foster, Oregon, on September 16, 1950."

Defendant offered evidence upon the trial to substantiate his charges of adultery. Plaintiff, as well as her alleged paramour, Harold C. Oleman, categorically denied such alleged misconduct on their part. The evidence offered by defendant was largely circumstantial, but, if believed, was sufficient to sustain a finding of guilt. There was other evidence in the record upon which a decree in defendant's favor might reasonably have been based, wholly apart from the charges of adultery. The trial court entered no findings of fact, and we cannot tell from the record whether it based its decree upon the proof respecting the charge of adultery or upon the evidence tending to show other alleged mistreatment of defendant by plaintiff. For the purposes of this case, it is wholly unnecessary for us to speculate upon what prompted the trial court in reaching its final conclusions.

With the future of this minor child in mind, we refrain from discussing in detail the evidence relating to the serious charges and counter-charges made by the parties to this suit against each other. No good

purpose whatever would be served in making public and permanent this bizarre record.

■ In this case, as in all others involving the custody of a minor child, our paramount consideration is the welfare and best interests of this baby girl. We should not, nor will we, permit her to be made a pawn in the battle between her parents. Neither will we, nor should we, allow her to be used as a weapon for punishment of either or both of her parents for their alleged wrongdoing.

The evidence as to plaintiff's alleged misconduct relates to a short period of time only; that is, from June, 1950, to September, 1950. No attempt was made to prove any wrongdoing on her part prior to that time, nor is there any evidence to show any misconduct by her subsequent to September, 1950. No public scandal is involved, nor, insofar as the record discloses, does plaintiff bear other than a good reputation in the community where she was born and has resided most of her lifetime.

During the time the alleged acts of indiscretion on the part of plaintiff occurred, the child was less than two years of age. Even if plaintiff was guilty of misconduct as claimed, it is obvious that this baby girl was too young to comprehend what was going on. The conduct of the mother could not possibly have produced any harmful effects upon the child at that time, nor have any direct bearing upon the child's welfare. It also is significant that insofar as the record discloses, the mother has led an exemplary life since September, 1950. In *Goldson v. Goldson,* 192 Or 611, 621, 236 P2d 314, we said:

"The moral unfitness of a mother sufficient to deprive her of custody must be such as to have a

direct bearing upon the welfare of her child. It is not for every act of indiscretion or immorality that she will be denied custody.''

Aside from the evidence relating to plaintiff's associations with Oleman, there is nothing whatever in the record from which it might be inferred ''that her conduct is so depraved, immoral, and wicked that to permit her child to remain in her custody would be injurious to its best interests'', nor, in our opinion, granting as true the evidence respecting her relations with Oleman, is the situation in any manner changed. *Goldson v. Goldson,* supra.

The evidence is almost conclusive that plaintiff has been a good mother to her child. Defendant did not directly claim otherwise. She has had the child's care and custody from its birth until this time. She has been and is devoted to her baby and to its best interests and welfare. Never has she neglected this baby in the slightest degree. With respect to this matter, we quote from the testimony of Ethel McCalflin as follows:

''Q   Has he ever, to your knowledge, contributed anything to the support of his wife and child or either of them except what was sent to them by the U. S. Government after he entered the navy?

''A   That's all. My husband and I have supported them.

''Q   All of the time?

''A   All of the time, and the baby practically ever since she was born.

''Q   And they have made their home there with you?

''A   Carol and the baby have.

''Q   And what would you say to the Court as to the way in which she has treated and taken care of this child at all times since it was born?

''A   She's a very good mother.

"Q Would you tell the Court conscientiously that you think she's a fit and proper person to have the custody of this child?

"A I do.

"Q And if granted its custody, do you think that the child would be properly supported and cared for?

"A I'm sure of it.

"Q Have you and your husband any children other than Carol?

"A Yes, one daughter. We have one other daughter.

"Q And you own your property here?

"A Yes, sir.

"Q And you are well able to help her if she should be granted the custody of this child, help her, as you have, to see that it is properly supported and educated?

"A We'd be glad to.

"Q And are willing to do that?

"A Yes, sir."

On the other hand, defendant is in no position to care for the child. His parents have had nothing whatever to do with the child's rearing nor its care and support. From the record it appears that they have never had any close association with the baby. In a way they are comparative strangers. This is not intended as any reflection upon defendant's parents, because they did not bring about that situation, unless indirectly so. Plaintiff, rightly or wrongly, blamed her "in-laws" for much of her trouble, and there never existed a close relationship between them.

■ But it is manifest that this child's best interests and welfare will not be promoted by taking her from a devoted mother whose guidance, care, love, and companionship she has enjoyed during the whole of her now four years of life, and turning her over to a grand-

mother whom she hardly knows, be that grandmother ever so capable. This is not a contest for custody between the mother and father of the child. As against the mother of the child, the grandmother enjoys no natural or special rights. *Pachkofsky v. Pachkofsky,* 192 Or 627, 635, 236 P2d 320; *Goldson v. Goldson,* supra.

If the trial court felt it proper to deny custody of the child to either of the parents, and that its best interests demanded that such custody should be awarded to a grandparent, we cannot understand why the paternal, rather than the maternal, grandmother was preferred. Practically all of its young life this infant had lived in the home with and had been supported by the maternal grandparents. The record establishes that they are fine and upright citizens. The reason assigned upon the oral argument in this court for the trial court's actions is indeed most fallacious. If the child were to be given into the custody of a grandparent, she should have been awarded to Mrs. McCalflin; although by this we do not wish to be understood as indicating that in our opinion the child's custody might have properly been awarded to anyone other than plaintiff.

The instant case is almost identical in its facts and circumstances with *Ruch v. Ruch,* 183 Or 240, 192 P2d 272. In that case the mother of the child, a five-year-old boy, admittedly had committed adultery. This court speaking through the late Justice BELT, at page 243, said:

> "Until this divorce decree was rendered, the defendant had always had the care and custody of her child. She was a good mother. The record is replete with evidence of her undying love and devotion for her baby. We are not unmindful that the father also loves his boy and that the paternal

grandparents—with whom the boy is now living—have great affection for him. The child, however, is a part of the flesh and blood of the mother. It is she who brought this little fellow into the world, and, in our opinion, is entitled to his custody. Courts will not deprive a mother of the custody of a child of tender age, unless it is clearly shown that she is morally unfit to have it.''

Also see *Sakraida v. Sakraida,* 192 Or 217, 233 P2d 762.

The statements of this court in *Ruch v. Ruch* concerning children of tender age applies with particular force to infant girls. *Goldson v. Goldson,* supra; *Baier v. Baier,* 172 Or 83, 87, 139 P2d 562.

During the minority of this child the jurisdiction of the trial court is a continuing jurisdiction over all questions pertaining to its best interests and welfare. The doors of the court are open at all times for a modification of its decree in relation to the custody, if in the future changed conditions warrant it.

It follows that the decree of the trial court should be, and it hereby is, modified by striking therefrom the provisions respecting the custody and support of the minor child of plaintiff and defendant, substituting therefor the following:

''The future care, custody, control, and maintenance of Margaret Joyce Pick, the minor child of the plaintiff and defendant, be, and it hereby is, awarded to plaintiff, subject to further order of the court. Defendant shall have the right of reasonable visitation.

''That defendant be, and he hereby is, ordered and directed to pay to the plaintiff for the care and support of said minor child the sum of $40 per month, until further order of the court.''

Except as herein modified, the decree is affirmed. Neither party shall recover costs.