Argued January 22, affirmed August 13, 1952

# FLANAGAN *v.* FLANAGAN

247 P. 2d 212

*Frank E. Nash* and *Frederic A. Yerke, Jr.,* argued the cause for appellant. With them on the brief were King, Wood, Miller, Anderson & Nash, all of Portland.

*Joseph McKeown* and *Andrew J. Newhouse* argued the cause for respondent. With them on the brief was Wallace A. Johansen, all of Coos Bay.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Selma M. Flanagan, from an order of the circuit court which denied a motion made by her for the modification of a part of a decree of divorce which made provision for the alternating custody of the minor son [Patrick] of the parties. The child was born October 16, 1947. The decree was entered February 2, 1950, and the motion for its modification was filed August 31, 1950. Thus, Patrick was 27 months of age when the divorce was granted and scarcely six months older when the motion for modification was filed.

The attacked provision of the decree follows:

"The Plaintiff is granted the care, custody and control of Patrick Flanagan, minor son of Plaintiff and Defendant, except for the months of March, July and November of each year until said child

shall be attending school, whereupon Plaintiff is granted the custody of said child during the year except for a period of two and one-half months during the summer vacation.

The motion under consideration sought the award to the plaintiff of "the complete care, custody and control of said Patrick Flanagan". The basis for the motion, stated in the latter, is the following:

"This motion is made upon the ground and for the reason that, by reason of changed circumstances which have occurred since the rendition of the decree made and entered herein on the second day of February, 1950, it is detrimental to the welfare of said minor son of the parties for the defendant to have periodic care and custody of said minor child."

The motion was accompanied by an affidavit made by the plaintiff which spoke of "changed circumstances" but gave no particulars. The defendant, Dr. John D. Flanagan, filed a counteraffidavit in which he averred:

"I specifically deny that there have been any changed circumstances since the rendition of the Decree in the above cause which would operate to the detriment of the welfare of the minor child, Patrick Flanagan, for me to have the care and custody of said minor child as provided in the existing Decree."

After the affidavits had been exchanged, a hearing was held in the course of which testimony was given which, as transcribed, covers 104 pages. We shall now give a summary of it.

Shortly prior to the institution of the suit for a divorce, the plaintiff returned to the home of her parents and took the child with her. The home is large and has quarters suitable for the plaintiff and the little boy. The plaintiff is not employed and, therefore, has ample time for the performance of her maternal duties.

The defendant practices his profession as a physician in Coos Bay and, after the plaintiff's departure, remained in the home which the family had occupied. It is a good home and has a large yard.

After the entry of the decree, the defendant, pursuant to its provisions, had the custody of Patrick in the months of March and July, 1950. Then the plaintiff filed the motion which precipitated the present proceeding. The defendant has fully and promptly complied with all of the conditions of the decree.

Evidently no bitterness exists between the plaintiff and the defendant. During the periods when the plaintiff had the custody of the child, the defendant's affection for it and his concern for its well-being prompted him frequently to drive to Portland for visits with it. Those visits were made in the home of the plaintiff's parents and in their presence as well as that of the plaintiff. All agree that the visits were pleasant and that nothing of an untoward nature developed. In July of 1950 when the defendant had Patrick in his home, the plaintiff visited some friends in Coos Bay and the defendant then permitted her to have the child for a day. During the presentation of the evidence, the trial judge remarked: "The parents have taken care not to run down the character of each other, and on which I wish to compliment the parties in this case, because they have had respect for each other and have evidenced it in this hearing."

The plaintiff's father, as a witness for his daughter, gave the following testimony upon cross-examination:

"Q  And you have respect for Jack and like him?
"A  Yes.
"Q  And he has been a fine father to the child?
"A  Yes, so far as I know, he has been.

"Q Does Jack show love and affection to the child?

"A He seems to, yes.

"Q (The Court) Does that seem to be mutual between the father and the child? The child also has affection for his father?

"A Yes.

"Q And the child, when he is with his father, seems to be happy?

"A Yes.

"Q Did you observe them in Portland?

"A Yes, and they were happy.

"Q Have you observed them in Coos Bay?

"A Yes, a few times.

"Q Has the child been healthy and happy those times?

"A Yes."

After the plaintiff had rested and the defendant had presented some of his evidence, the following colloquy occurred. [The name, Nash, is that of plaintiff's counsel and McKeown that of defendant's].

"The Court: I might state for the benefit of counsel that I do not want to restrict cross examination. But it seems to me that the fact is established in this case, and it is therefore not at issue as an issue of fact, that during the visits of this boy in March and July, which are the only visits under this agreement, that the boy received affection from his father and that he suffered in no way in his physical condition. I think that is the testimony of the plaintiff, and I think there is no issue of fact to be established in that connection.

"Mr. Nash: That is correct. There is no issue on that fact.

"Mr. McKeown: Except as it may bear upon his condition at the time he returned to his mother, relative to the complaints she has. In other words, there is testimony that when he returned home he lacked appetite.

"The Court: It would be corroborative of the plaintiff's testimony, unless it is that it was not good.

"Mr. McKeown: Yes.

"The Court: I think it is established that he was in normal health and that physically he was as well off after the visits as before and that he was well taken care of and that he received affection from his father and that the child had great affection for his father. It seems to me that that is the situation here now."

The verity of that statement is not challenged. The record fully warranted it.

It will be recalled that the motion for modification of the decree was based upon purported "changed conditions". The motion seeks termination of the alternating custody provision and an award to the plaintiff of "the complete care, custody and control" of the child. It is claimed that conditions changed after the decree was signed. The following, according to our understanding of the plaintiff's contention, is a full list of all the purported changes: (1) After the plaintiff had left the parties' home and at about the time when the decree was signed, the defendant's mother, who was 71 years old, moved into the home. The mother was fond of the child and the plaintiff had anticipated that she would help care for it during the times when the defendant had its custody; (2) in July, 1950, the defendant's mother left his home and has not returned; (3) in July, 1950, when the defendant had the custody of Patrick, he was assisted in part in caring for him by his sister, but principally by a cousin of the little child, Patsy Kuni. The latter was capable and very fond of Patrick. She had helped to care for him before the separation; (4) August 12, 1950, the defendant mar-

ried a young woman who was employed by the group of doctors with whom the defendant practiced; the young woman is a registered nurse; (5) "the most noticeable way in which condition changed following the decree," so the plaintiff's brief argues, "was with respect to the impact of the divided custody arrangement upon Patrick Flanagan." As support for that statement, the plaintiff swore that when the child was returned to her after the March and July visits it suffered for a week or more from fear, lack of appetite, disturbed sleep and nightmares. In a week or more normal conditions returned. The plaintiff does not even intimate that the defendant gave the child ill-chosen food, abused it or sought to prejudice it against the plaintiff. Her sole claim is that the change in environment upset Patrick emotionally.

There is no claim that the defendant's present wife was the cause in any degree of the matrimonial difficulties that led to the divorce between the plaintiff and the defendant. The plaintiff makes no claim whatever that the defendant displayed any interest in his present wife while the parties remained married. The defendant's present wife testified that while she was undergoing training for her profession her schooling included "three months of specialized work with children." No contention has been advanced that the new Mrs. Flanagan is ill-adapted to participate in the care of the child.

The defendant conceded that some disturbances usually occur when a young child is transferred from one home to another. He and others swore than when Patrick came to his home no difficulties, even of a temporary nature, were encountered with his sleep, appetite or other regimen. He mentioned some expedients to which he resorted. Apparently the child's stay with his father was a happy, healthy experience for

Patrick. The defendant discovered two impairments in its health and corrected them; one was an anemic condition.

The provision for the alternative custody was entered in the decree on account of the following provision in a property settlement agreement which the parties signed January 19, 1950:

"It is understood and agreed that Patrick Flanagan, minor son of the Parties, now approximately twenty-seven months of age, and that subject to the order of any court which may have jurisdiction thereof, the Second Party shall have the care, custody and control of said child during the year, except for the months of March, July, and November of each year, during which time the First Party shall have the care, custody and control of said child. When said child shall have entered school, said child shall remain with the Second Party and in her custody and control, except for a period of two and one-half months during the summer vacation period, during which time said child shall be in the custody of the First Party."

The evidence satisfies us that the provision just quoted resulted from several discussions concerning the custody of Patrick which took place between the mother and the father as they contemplated the severance of their conjugal ties. Sundry proposals and counterproposals upon the subject were considered. The defendant, according to our interpretation of the evidence, insisted that he should have the boy for fixed periods at stated intervals so that "I could see any changes in him and possibly remedy them." As a witness, he gave in explanation for his insistence reasons which appear to us as valid and warranted. As a result of the discussions, the property settlement agreement was drafted and signed. The plaintiff does not claim that she did

not understand it or that any unfair advantage was taken of her.

██ Although the quoted provision of their agreement is not controlling upon the courts, yet since it represents the deliberate compact of the mother and the father to which they came after many discussions, it, obviously, is entitled to very careful consideration by any court which is required to make an order concerning the boy's custody. The plaintiff and the defendant are intelligent people and their little son is near the heart of each of them. We are satisfied that neither would have signed the property settlement agreement containing the custody provision unless convinced that it was for the best interest of Patrick. In view of the fact that the defendant has manifested marked affection for his son and deep concern for his welfare, we believe that the parties did well when they provided that the child should know his father and that the latter should have opportunity to observe the development of his son.

In *Cripe v. Cripe,* 186 Or 502, 207 P2d 1049, this court said:

"It is a well-established rule in this state that a decree fixing the custody of a child is final on the conditions then existing and may not be modified thereafter unless based on some change in the circumstances relating thereto and occurring since the rendition of the original decree, or on material facts existing at the time of the decree but unknown to the court, and then only when such modification would be for the best interests of the child."

It is clear that the provision of the decree governing the custody of Patrick adjudicated all issues upon that subject as they appeared at the time of the decree's entry. The motion under consideration requires us to

determine whether "a change in the circumstances" relating to the custody has occurred since the decree's entry and whether, if a change has occurred, it is of such a material nature that "modification would be for the best interests of the child." The evidence warrants a finding that the child is normal, healthy and making good progress. It justifies a finding that the defendant, during the child's two visits with him, made substantial contributions to its well-being. He did nothing whatever detrimental to its welfare and made no attempt to alienate the child's affection for its mother.

Although the plaintiff mentioned the item that the defendant's mother is no longer in his home and that he has remarried, her principal stress has been placed upon the fact that when Patrick was returned to her after the March and July visits of 1950 he was upset for a week or two. The circumstance that he found it difficult to adjust himself to the change in his environment was not in truth a change in attendant conditions. The only new development that then occurred was the plaintiff's discovery that a little child cannot at once adjust itself to a change in its home, surroundings and those about it. Even people of mature years sometimes experience similar difficulties with changes in their environment. But for present purposes we will deem the conditions observed by the plaintiff as changes in attendant conditions.

We do not believe that the fact that the defendant's mother is no longer a part of his household constitutes such a change in attendant conditions that it requires a modification of the decree. When the custody agreement was under consideration by the parties, the plaintiff did not urge that the defendant's mother should become a part of his household, and the decree is silent upon the subject. The mother is 71 years of age, and

we are aware of no reason for believing that her presence in the home is essential to the just operation of the custody provision.

■ Experience may show that the defendant's present wife is ill adapted to participate in the upbringing of Patrick, but stepmothers are not always lacking in qualifications for such tasks. At least one former occupant of the White House, whose life is commonly deemed a benediction, referred to his stepmother as "my angel mother." Patrick's stepmother, as a witness, avowed affection for the little child and expressed the belief that she could capably perform the functions expected of her. At that time she, of course, had had opportunity to do nothing more than to become acquainted with the child. The marriage of the defendant to his second wife does not appeal to us as a sufficient change in attendant conditions to require the modification of the decree.

■ We believe that the plaintiff, in her efforts to secure the modification of the decree which she seeks, depends principally upon the fact that Patrick could not adjust himself to the change from the defendant's to her home without suffering therefrom for a few days. It is unfortunate that the little boy underwent those experiences and that they may recur when future changes are made. The change from the defendant's to the plaintiff's home, however, occurs only three times a year under the provisions of the decree.

When a home enriched with children is rent asunder by a decree, it is impossible for any court to recreate by its order the happy, wholesome conditions which would have existed had no domestic disruption occurred. A decree of divorce with its custody provisions cannot contrive a satisfactory substitute for a happy parental home.

The plaintiff's contentions present this choice for us: (1) Should the boy be subjected three times a year to the temporary conditions which she described; (2) should the boy be denied permanently visits to his father.

This court, like many others, has many times expressed its disfavor of divided or alternative custody. The first of the two above choices is in reality that of alternative custody. We observe that although the plaintiff's brief dwells upon the evils which many times result from divided custody, it points out no unfavorable development that has appeared so far from the operation of the divided custody provisions except the temporary emotional disturbance which we have described. Because those unfortunate incidents twice took place, the plaintiff asks that they be deemed changes in attendant conditions and that this court accept them as ground for terminating the custody provision. Evidently neither parent is bidding against the other for the favor of the little youngster, and likewise neither is seeking to alienate in the child's estimation the affection of the other. If either parent has sought to gain countenance with their little son through withholding deserved disciplinary treatment, the matter has not been mentioned. In short, the only reason advanced by the plaintiff for a termination of the alternative custody provision is that it subjects the child three times a year to temporary emotional disturbances.

It may be that intelligence and resourcefulness will enable the mother to ameliorate the disturbances in the boy which occur when he returns from his visits to his father. Those disturbances are regrettable, but we believe that greater misfortunes can visit a boy. If his father is a good man, has affection for his son and is capable of contributing to the latter's development, it

would be more unfortunate to deprive the boy of his father's amity, companionship and interest. Having only those two choices, we choose the second. In making the choice, we feel justified in part in so doing by the fact that the circuit court judge did the same. Before so doing he had an official of his court, with the consent of the parties, make an independent investigation. The report of the investigation is before us.

We do not believe that a modification of the custody provision should be made. The attacked order is affirmed.