Argued January 21, affirmed as modified February 4, 1953

# McDONALD *v.* McDONALD

### 253 P. 2d 249

*Norman K. Winslow,* of Salem, argued the cause and filed a brief for appellant.

*Bruce W. Williams,* of Salem, argued the cause and filed a brief for respondent.

Before WARNER, Acting Chief Justice, and ROSSMAN, BRAND, TOOZE, and PERRY, Justices.

PERRY, J.

This is a divorce suit commenced by the plaintiff against the defendant, asking a decree of divorce, custody of the minor child of the parties, and alimony. The defendant answered and by cross-complaint asked for a decree of divorce, custody of the minor child, and an award to himself of substantially all of the real and personal property of the parties.

From a decree granting the plaintiff a divorce, a division of custody of the minor child, and a division of the property between the parties, the defendant has appealed.

It is the contention of the defendant that the decree of divorce should have been granted to him instead of to the plaintiff; that subsequent to an adverse determination of a previous divorce suit instituted by the plaintiff, the plaintiff left the home of the defendant and refused to longer live with him; also that the plaintiff in the previous suit made false charges against the defendant which were resolved against her by the denial of a favorable decree from the circuit court.

The grounds upon which a divorce is sought, refused or granted, are as of the date of the decree,

unless appealed, res judicata. *Matlock v. Matlock,* 86 Or 78, 80, 167 P 311.

In the prior case between these parties the defendant had also filed a cross-complaint against the plaintiff charging substantially the same acts of cruelty as set out in his cross-complaint in this matter. The decree in the previous case dismissed the complaint of the plaintiff and the cross-complaint of the defendant without setting forth the reason therefor, and whether the court at that time found the parties *in pari delicto* or that the claims of each were untrue and without foundation, this court cannot say.

3. The defendant also has alleged in his cross-complaint, as grounds for divorce, that the plaintiff was guilty of wilful desertion. The cross-complaint alleges the desertion as of March 28, 1950. The plaintiff's suit in which she prevailed was filed on the 8th day of February, 1951, less than one year between the time of the commencement of the claimed desertion and the bringing of this suit. While this suit was pending between these parties, they could not very well live together and cohabit as husband and wife. *Billion v. Billion,* 124 Or 415, 421, 263 P 397. Our statute requires "wilful desertion for the period of one year." § 9-907, OCLA.

■ But the defendant, by re-alleging substantially the same matters as set forth in his claim of desertion, contends that the plaintiff has been guilty of cruelty in not cohabiting with him.

We will hereinafter set out some of the actions of the defendant. They were, to say the least, not at all conducive to the plaintiff's resuming the marital bed.

The trial court had the opportunity of noting the manner, appearance and demeanor of the parties; from

the decree it is evident that the trial judge felt that the plaintiff was justified in her actions, and with this we agree.

■ The defendant further contends that the trial court was in error in granting to the plaintiff a decree of divorce. It is the defendant's position that his surreptitious taking of the child did not constitute cruelty because there was no wilful purpose on his part to cause suffering to his wife.

The child was being well-cared for and no reason was given by the defendant that his flight with the child was in anywise necessary to the child's welfare. The defendant attempts to give the impression that he removed the child only because of his personal love for the child and not to distress the plaintiff. There is ample evidence of actions on the part of the defendant, after the termination of the prior divorce case, that indicates considerable ill-feeling of the defendant toward the plaintiff and a deliberate attempt to harass her.

It was necessary for the wife to make a forcible entry of the home to get her personal belongings and a cedar chest. The defendant required the plaintiff to pay one-half of the living expenses of the parties, dividing that expense down to the last loaf of bread. If the plaintiff came home from work and did not feel like preparing a meal she was compelled to pay for the meal eaten outside the home. The defendant testified as follows:

"Well, at one time we had discussed the division of the property. At that time she promised to give me my rings back, and I would give her the chest [cedar]. And she asked for the chest, and I told her she hadn't given me the rings back—and I told her she hadn't given me the rings back, and she said, 'Oh, I don't have to give you those back,' and that is the reason I didn't give her the cedar chest."

He testified further:

"Well, since we were living apart in our own home, I didn't see why we should not share expenses."

The court could readily believe from these actions that the protestations of love for the plaintiff were not entirely in good faith, but, in fact, were actuated by a singular desire to keep her in a state of mental unrest, and indeed the letter which he wrote to the plaintiff, after surreptitiously taking the child, in which he states, "By this time you no doubt realize Janet will no longer be back to your residence in any permanent status," shows a wilful desire to cause the plaintiff great mental anxiety and suffering. The defendant says that there was no reason for her anxiety and suffering because the plaintiff admitted she thought the defendant would take good care of the child.

The welfare of the child is one thing; the right of a mother to the presence of the child to direct and guide her, to shed her love and affection upon the child and have that love and affection returned, is another. And the threat poised in the letter proposed to permanently destroy that close relationship of mother and child. We are persuaded that the trial court was correct in his opinion that the acts of the defendant constituted cruelty within the meaning of our statute.

■ The defendant next complains that he, and not the plaintiff, is entitled to the custody of the minor child. It is the policy of the courts, and indeed the stated policy of this court, that where the custody of a child of tender years (Janet is now six) is concerned, unless the mother is shown to be unfit to have the child's care, the custody shall be reposed with the mother. *Goldson v. Goldson,* 192 Or 611, 236 P2d 314; *Sakraida v. Sak-*

*raida,* 192 Or 217, 217 P2d 242, 233 P2d 762. The trial court divided the custody of the child, granting to each parent six months in the year in which to have the custody of the child, until the child reached school age, at which time the mother had the custody of the child for a period of nine months and the father had the custody for three months, with the right of reasonable visitation by each party when the custody of the child was with the other.

The child is now of school age.

■ This court has expressed itself as opposed to the principle of divided custody. *Raw v. Raw,* 195 Or 373, 245 P2d 431. Though reluctant to disturb the decree of the able trial judge who heard this matter, we are constrained to modify the decree so that the custody shall remain in the mother. We feel, however, that the father, like the mother, should have his portion in sharing the love and affection of the child. To effect this the decree shall provide that the mother shall have the care, custody and control of the minor child with the right of the father to visit the child at reasonable times and places and under reasonable circumstances, and, in addition thereto, during the summer vacation, when the child is not required to be in school attendance, the father shall have the right of the child's visitation in his home commencing one week after the termination of school in the spring and terminating one week before the commencement of school in the fall. And, while the child is visiting in the father's home, the mother shall have the right to visit the child at reasonable times and places and under reasonable circumstances.

■ The defendant complains of the alimony award to the plaintiff. Justice BAILEY, in the case of

*Siebert v. Siebert,* 184 Or 496, 502, 199 P2d 659, stated the rule as follows:

> "In determining whether alimony should be paid, as well as the amount thereof, courts are vested with a wide range of discretion. This power of determination is neither arbitrary nor uncontrolled. Much depends upon the particular facts of the individual case. Among the matters to be considered are: The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living. Fuller v. Fuller, supra; Duff v. Duff, 268 Ky. 343, 104 S. W. 2d 1095; 17 Am. Jur. Divorce and Separation, § 597, p. 467. The conduct of the parties may enter into the determination of the amount of alimony to be allowed. Where the wife is free from blame, the allowance will be greater than if her conduct was conducive to her husband's fault. Wilhelm v. Wilhelm, 126 Or. 388, 270 P. 516; 27 C. J. S., Divorce, § 223 c. (1), p. 957."

The defendant, however, in all fairness to this court, concedes that, if this court cannot sustain his contention that he and not the plaintiff is entitled to the divorce, his position is not tenable. Since we are of the opinion that the trial judge was correct in granting the plaintiff the decree of divorce, we will merely add that we feel that the trial judge did not in any wise exceed his judicial discretion.

For the reasons above set out the decree of the trial court is affirmed, except as modified.