Argued May 3, affirmed as modified June 2, petition for
rehearing denied June 22, 1955

# McGETRICK *v.* McGETRICK
284 P. 2d 352

*Lyle R. Wolff,* Baker, argued the cause for appellant. On the briefs were Wolff and Johnson.

*Gordon Wilson,* John Day, argued the cause for respondent. On the brief were Wilson and Olsen.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK and PERRY, Justices.

WARNER, C.J.

From an order modifying the provisions of a decree of divorce relating to the custody of the minor daughter of the parties and reducing the monthly payments required for the child's support, the plaintiff Margy McGetrick, now Mrs. Gordon Catterson, appeals.

The McGetricks were married on September 26, 1949. Their daughter Kathy was born October 3, 1951. On June 6, 1952, while they were living in John Day in Grant county, plaintiff brought suit for divorce on the ground of cruel and inhuman treatment. After trial the court entered a decree, on July 31, 1952, granting a divorce to plaintiff and awarding her the care, custody and control of Kathy, subject to the father's right to visit the child at reasonable times and obligating him to pay $50 per month for his daughter's support.

Subsequently, plaintiff left Grant county and was employed as a cook on the Rasmussen cattle ranch near Baker. While there she met and later married the foreman, Gordon Catterson. The Cattersons now maintain a home in Baker where the former Mrs. McGetrick resides with her daughter Kathy.

McGetrick has remarried and continues to live in John Day. A child has been born to this last union. Defendant's employment in the logging business, where the work is more or less seasonal, leaves him with a greatly diminished income during the three winter months.

The instant matter results from the defendant's motion for a modification of the decree of July 1952 whereby he might have his daughter with him in John Day for at least four days each month. The order of the court not only granted the father's petition but reduced the provision for monthly support and, so far as pertinent, reads:

"IT IS FURTHER ORDERED, DIRECTED, DECREED and ADJUDGED That the decree heretofore entered in the above entitled cause be, the same hereby is, modified to provide that the Defendant, Harley McGetrick be hereafter awarded the temporary custody of the minor child born to the marriage of the parties hereto, to wit: Kathy McGetrick, for a period of four days out of each month, namely from the first Friday of each month to the following Monday thereof, inclusive. That during said four day period the Defendant, Harley McGetrick shall arrange for the transportation of said child to and from its home which is presently in Baker, Oregon, and said child to be obtained by the Defendant, Harley McGetrick, after 8:00 a.m. on the first Friday of each month, as aforesaid, and returned to the custody of her mother, the Plaintiff, Margy McGetrick, not later than 7:00 p.m. on the first Monday of each month, as aforesaid * * *."

This was followed by a provision reducing the monthly payments to $35 a month for all months except the winter months of December, January and February and as to those months the payments were fixed at $25.

Baker, Oregon, is approximately 97 miles from John Day. Travelers between these two places must depend entirely on motor transportation. The element of distance and the difficulty of enjoying a proper visit with his daughter in the home of others were the factors motivating McGetrick to request the modification obtained.

The court found, and we think correctly, that there had been "continual disagreement" between the parties regarding visitation, that the original provision for that purpose was "impractical and unsatisfactory", and that there had been a change in circumstances since the entry of the divorce decree of July 1952 warranting a modification.

This court has always inclined to vest the custody of a child of tender years in the mother in the absence of evidence of immorality or neglect, particularly when the child is a little girl and it appears to be for the best interests and welfare of the infant to do so. *McDonald v. McDonald,* 197 Or 275, 280, 253 P2d 249; *Pachkofsky v. Pachkofsky,* 192 Or 627, 236 P2d 320; *Goldson v. Goldson,* 192 Or 611, 236 P2d 314. Here we find nothing to discredit the mother's character, nothing which marks her as unworthy in her care of and devotion to her little daughter, and nothing which at this time would justify relieving her of the legal care, custody and control of Kathy.

■ However, the satisfactory character of these maternal factors are, alone, insufficient to warrant removing the child beyond the pale of the father's affection and masculine counsel when it appears that he is

a man of good reputation and is considerate of the child's well being, and that such association of father and child can be provided for safely and conveniently.

The right to custody of children of divorced parents cannot be made a pawn and employed as a reward to one party or as a punishment of the other. *Edwards v. Edwards,* 191 Or 275, 278, 227 P2d 975. We recognize that the well-rounded development of a normal child demands association with both parents and that a father is entitled to a fair opportunity to share in the child's love and affection when this end can be achieved without detriment to the child. *Hixson v. Hixson,* 199 Or 559, 571, 263 P2d 597; *McDonald v. McDonald,* supra, at p. 281; *Raw v. Raw,* 195 Or 373, 376, 245 P2d 431. The accomplishment of this does not necessarily dictate a divided legal custody between the parents. Indeed, we have frequently indicated our disapproval of divided or alternate custody and seek to avoid it when such course is consistent with the best interests of the child. *McDonald v. McDonald,* supra, at p. 281; *Flanagan v. Flanagan,* 195 Or 611, 622, 247 P2d 212; *Raw v. Raw,* supra, at p. 377.

In this matter we think a complete legal custody should repose in the mother, with rights of visitation vested in the father, coupled with a right to have the child visit him, with, of course, such incidental control in him during such periods as is necessary for the immediate protection of the child's health and welfare.

Kathy will not be four years old until October 1955. A girl child of such tender years merits special consideration to insure that her welfare will not suffer from an over-eager desire of either parent to enjoy her companionship too exclusively. She should be accorded the benefits of association with both parents, and they should have the pleasure flowing from her

affection for them, but always at times and places which will not jeopardize her welfare.

We take note that a part of the route that separates the residences of Kathy's father and mother passes through mountain areas known for their extremes of weather in the winter season. To shuttle so young a child back and forth once every month, as proposed by the modified decree, would involve nearly 2,400 miles of travel annually. This would consume no small part of the time allotted to the father for visitation with his daughter and, besides, would at times unnecessarily expose her to the risks and rigors of the winter season. Nor are we unmindful of the evils which flow from a too-frequent change in the environment of a child so young in years.

With these matters in mind and desiring to avoid or minimize as much as possible any baneful results to the child which might flow from the decree as presently modified and in order to conserve the father's time and income for the benefit of both parent and child, we direct that the court's order of modification as made on September 9, 1954, be affirmed when modified in the following particulars so as to provide:

(a) That Harley McGetrick, the father, be given the right to have his daughter Kathy visit him in his home in John Day once each year for a continuous period of six weeks to be fixed by the court within a period beginning not sooner than June 1 and ending not later than August 31 of each year;

(b) That either parent shall have the right to visit the child at reasonable times and for reasonable periods while the child is residing with the other parent; and

(c) That the right to the legal custody, care and control of Kathy be continued in the child's mother,

now Margy Catterson, notwithstanding the provisions for the child's visitations with her father.

The net result of the foregoing changes is to confirm in the father a period of uninterrupted visitation which nearly equals the aggregate of the time available through monthly visits. It is our understanding that fulfilling the pattern of monthly visitations provided in the order appealed from would necessitate the father losing some income by laying off from his work.

The trial judge is the father of young daughters and is wise in family matters. Apparently he had acquired a favorable impression of the potential capacity of both parties as parents, saying at one point: "* * * I know both of these parties, and I am convinced he is a good father and she is a good mother. * * *" We find nothing to contradict these conclusions but note with some concern the judge's irritation with the McGetricks because of their apparent lack of cooperation in sharing the child's society as contemplated by the pattern of the original decree. Once he observed: "* * * I hoped the two of you would act as adults, but you haven't done a good job. * * *" This attitude arrests our attention and prompts what we hereinafter say.

In *Flanagan v. Flanagan,* supra, at p. 621, Mr. Justice ROSSMAN, speaking for the court, well said: "* * * A decree of divorce with its custody provisions cannot contrive a satisfactory substitute for a happy parental home."

It is a child's normal and rightful heritage to reside in an environment graced by parental harmony, influenced by religious precept and abundant in affection and understanding for the child; a home wherein the parents are guided by a common desire and design, within the bounds of their ability, to make it a haven

of health, happiness, comfort and security for the little ones born to them. These things can be obtained only by parental cooperation, and not infrequently at the cost of considerable sacrifices in parental time and substance.

The law has no adequate substitutes for the values accruing to a child residing with a united family in an atmosphere of normal living. No court can supplement by decrees or orders of compulsion the indispensable intangibles of daily affection, moral counsel and adult guidance so essential to the physical, mental and moral development of the completely balanced and socially integrated child. Parenthood is a continuing bilateral responsibility and opportunity. It cannot be avoided nor successfully divided. A decree of divorce offers no excuse or alibi for the abatement of parental interest or obligation.

The dissolution of the marriage contract, leaving in its wake children who are the innocent victims of the resultant broken home, should be a challenge to the fathers and mothers of such children to make an even greater effort to minimize, as far as possible, the incidental and unavoidable losses of love, counsel and guidance.

The consignment of custody of a minor to one parent and the imposition of a financial duty on the other to support it do not relieve either of the duty to give to the child those distinctive contributions to its welfare that can be derived only through a loving mother on the one hand and a wise and understanding father on the other. What the courts cannot give, the parents are under greater duty than ever to supply. The area comprehended by their child's life is in a sense an island, apart from their own, where the parents can and should occasionally repair in an atmosphere devoid of bitterness and recrimination, and, in a spirit

of cooperation and unselfishness, strive to discover how they best can supply and retain, even though imperfectly, some of the intangible values which their child lost by reason of their legal separation, no matter how legally or morally meritorious that separation may be.

Affirmed as modified. Neither party shall recover costs.