Argued June 22, affirmed as modified August 20, 1979

In the Matter of the Marriage of
KENYON,
*Respondent,*
*and*
KENYON,
*Appellant.*

(No. 43569, CA 13371)

598 P2d 1225

Robert L. Engle, Woodburn, argued the cause for appellant. With him on the brief was Eichsteadt, Bolland, Engle, Schmidtman & Rohrer, Woodburn.

John A. McCormick, Albany, argued the cause for respondent. With him on the brief was Emmons, Kyle, Kropp & Kryger, Albany.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

ROBERTS, J.

## ROBERTS, J.

The parties in this appeal, whose marriage was dissolved in 1974, are the parents of two boys, aged 14 and 16. By the terms of the original decree the mother had custody of the boys. The parties stipulated in court in March, 1977, that father should have temporary custody of the children from January 19, 1977 through June 1, 1977, subject to mother's right of visitation at reasonable times and places; however, commencing June 1, 1977, the children would return to live with mother for the summer and mother would have temporary custody to September 1, 1977, subject to father's right to visit at reasonable times and places. The order further provided that the issue of permanent custody should be brought before the court on motion of either party or by an executed stipulation, and that "the award of temporary custody * * * shall be without prejudice to either party in determining * * * permanent custody." The court ordered no support to be paid by mother while the children were with father, but ordered father to pay $75 per month per child while the children were with mother.

In July, 1978, the decree was modified, by stipulation of the parties, placing the custody of the younger boy with father. Neither party was required to pay child support to the other. In January, 1979, the court ordered the custody of the older boy to be with father also. Father appeals citing as errors the trial court's failure to require the mother to contribute to the support of her sons, the court's order that the children are not to participate in the plans for visitation with mother, and the failure of the trial court to award attorney fees to father.

On the matter of child support, father's testimony was that his net income as an industrial worker is between $900 a month and $1,200 a month depending upon whether he works a five-day week or a seven-day week. His taxable income in 1977 was $22,000 and he

[593]

estimated his 1978 income would be over $20,000. Mother's monthly net income is approximately $916.

The trial court did not require mother to pay child support saying

"THE COURT: * * * We were here July 28th of this year, and stipulated how the matters should be settled between them, and the only change since then is that Keith is now with his father, and that's with mutual consent. He is asking for child support from her, and I don't think there has been enough change since July 28th to warrant it. I think Mr. Kenyon has some benefits, he's getting the tax deductions, on top of that Mrs. Kenyon is going to pay for these visitations. * * *"

In July, 1978, each parent had the custody of one child and neither parent paid child support, but now both children are with father. We deem a change of custody to be such an obvious change of circumstance that it alone warrants consideration of child support by the trial court. This was not only a change of circumstance of a nature beyond what was contemplated in the decree, *Delf and Delf,* 19 Or App 439, 528 P2d 96 (1974), but was beyond that contemplated by the parties six months earlier when they stipulated to a different custody arrangement.

In reviewing de novo we conclude that mother should make a contribution to the support of the children. Both parents have an equal duty to support their children. ORS 109.010; *Whitlow and Whitlow,* 25 Or App 765, 550 P2d 1404 (1976). We said in *Westby and Westby,* 30 Or App 431, 433, 567 P2d 145 (1977), "it is sound public policy to require a noncustodial parent who is financially capable of contributing to do so even though the custodial parent's income is sufficient to support the children without such contribution. ORS 107.105(1)(b)."

Here we recognize that mother is required to pay all transportation expenses for the boys to visit with her. However, this will not be unduly burdensome because

of the visitation schedule. Likewise, the fact that father will now claim both children for tax purposes is a factor to be considered in determining the amount of child support. While father is earning more than mother, mother is financially capable of making a contribution. The decree is therefore modified to require mother to pay $50 per month per child until each child reaches the age of 18 or until the age of 21 if the child is regularly attending school.

On the matter of visitation, father assigns as error a "holding" by the court that the minor children are not to participate in decisions regarding visitation. The claimed error is based on the following statement made by the court after an unrecorded conference with the children in chambers without attorneys present.

"THE COURT: '* * * [the children] are not to be permitted to determine whether they wish to visit, with their mother or not, and personal plans of the custodial parent; school activities; church activities, or other plans are not to be reasons for failing to adhere to the visitation schedule. * * *

"* * * [Father] is going to be responsible to direct and encourage them to go at the scheduled times, and a failure by the boys to visit at the scheduled times is going to be considered by this Court as a strong indication that the [father] is in contempt of this order.

"I might point out to the boys, that if this were to occur and your parents back in Court again, and this Court were to find your father in contempt of this order, then, he is going to jail, or could. So, if you want him to go to jail, you just balk at going on your visits. * * *'"

It is of no benefit to set out a history of the problems the parties had experienced in visitation arrangements which, without doubt, prompted the court to make the statement. While we may not approve of the language the court used to impress on the parties and the children the consequence of refusing to follow the court's order, it is the order itself we examine to determine whether it should be modified.

[595]

Although seven of the ten paragraphs in the order dated January 11, 1979 are directed at resolving this problem, the only reference to the above statement in the order is "(6) [t]hat the social activities and school activities shall not interfere with the above visitation schedule outlined."

In *Kilpatrick and Kilpatrick,* 38 Or App 159, 161, 589 P2d 1153 (1979), we said:

> "The best interests of the children is the paramount consideration in setting the conditions of visitation. *Pergament and Pergament,* 28 Or App 459, 559 P2d 942 (1977). Allowing the noncustodial parent to have school-age children for part of the summer vacation is ordinarily desirable to promote a strong relationship with the noncustodial parent, *McGetrick v. McGetrick,* 204 Or 645, 284 P2d 352 (1955) * * *."

Where there have been prior disputes over visitation between the parties, or between the parties and the children, specificity in the provisions of the decree appear reasonable. *Cook and Cook,* 29 Or App 171, 176, 562 P2d 601, *modified and remanded with instructions on other grounds,* 280 Or 589, 572 P2d 312 (1977). Under the circumstances here we find the provisions in the decree regarding visitation to be reasonable.

We affirm the trial court's denial of attorney fees to father.

Affirmed as modified. No costs to either party.