Argued December 17, 1974, affirmed January 20, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
HOLMES, *Respondent, and* HOLMES, *Appellant.*

530 P2d 889

*Claud A. Ingram,* John Day, argued the cause for appellant. With him on the brief were Ingram & Schmauder, John Day.

*Thomas M. Mosgrove,* John Day, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

This is an appeal from an order modifying a decree of dissolution of marriage by awarding custody of the minor child of the parties to the respondent-mother. The decree was entered on March 13, 1972, and granted custody of the child to the appellant-father. In July 1974 the mother asked for and was granted custody of the child, who is now seven years of age.

The father makes two assignments of error. His major contention is that the mother did not show, as is required, a substantial change in circumstances which would warrant a change of custody. He further contends that the mother did not come into court with "clean hands" and, therefore, the court erred in granting the order.

The circumstances surrounding the original decree are significant to this determination. The mother initiated the proceedings for dissolution of marriage. The father did not make an appearance, in person or by counsel. Informal property and child custody agreements were incorporated into the formal decree, custody going to the father. At the modification hearing the mother testified that she agreed to the custody arrangement because of several factors: that the father threatened to fight for custody of the child all the way to the Supreme Court if she did not agree to giving him legal custody; that she did not have the

funds for a custody contest; and that she wanted the dissolution to be as amicable as possible. For these reasons she and the father entered into a private agreement to allow the father to be given legal custody provided that the child would stay with her when the father was working. The court was not informed of this agreement. With respect to the extra-judicial custody agreement, the father testified that the child was to stay with the mother only until he remarried or made other arrangements to care for the child when he was working.

In *Ruch v. Ruch,* 183 Or 240, 192 P2d 272 (1948), our Supreme Court expressed its strong disapproval of a secret agreement between a husband and wife— that if the wife would not contest the divorce the husband would obtain custody of the child but would permit the wife to have physical custody of the child. Holding that this agreement was a fraud on the court and of no effect, the Supreme Court on appeal by the husband from an order modifying the decree by giving custody of the child to the wife, stated that it was entitled to consider the entire record to determine what was best for the welfare of the child.

■ Although the facts in the case at bar are somewhat different than in *Ruch,* we believe that the same rule should apply here, namely, that the private, extra-judicial custody agreement between the parties, which was not disclosed to the trial court, is of no legal effect, and that this court is entitled to consider the entire record to determine what is best for the welfare of this child.

The other significant facts are as follows: The child has stayed with the mother five days a week for

over two years. The father is a state police officer. His job takes him out of town frequently, or requires him to work at unusual hours. Because of this the father habitually had the mother care for the child except on his days off when he always had the boy with him. The mother remarried immediately after the decree. The father just recently remarried. Both parties live in the same area. When the child is with his mother he lives in the home of his stepfather, his mother, two half-brothers and a half-sister. The mother has two sons and one daughter, ages 11, 12 and 14, respectively, by a previous marriage. The father pays the mother $40 a month for the child's support and takes care of most of his other expenses. When the father remarried he informed the mother that he was no longer going to leave the child with her when he worked, and that he was going to have him with him and his wife all the time. This statement by the father led the mother to institute this change-of-custody proceeding. The child enjoys being with his natural father. There is no evidence that he does not like his new stepmother.

The trial judge indicated that he considered both parties to be good parents and that the child would be in a good home with either of them.

■ Although the record indicates that the mother's relationship with her present husband may have been the immediate cause of the breakup of the marriage, this would not permanently disqualify her from being awarded custody. *Hogan v. Hogan,* 6 Or App 122, 486 P2d 1309 (1971).

■ After reviewing the entire record it is our conclusion that the trial judge was correct in deciding

that the child's future welfare would be best served by allowing him to remain with the mother and his half-brothers and half-sister in the same household in which he has been living since the separation of his parents. (All the children had made their home with the parties to this proceeding prior to the separation.) *See, Mc-Cutchan v. McCutchan,* 5 Or App 96, 483 P2d 93 (1971). It is the trial judge who "sees the witnesses and the parties and hears the testimony [and] is in a better position than the appellate court, which has only the cold record before it * * *." *Ruch v. Ruch,* supra at 244.

Following the decree of dissolution the parties apparently were able to work out the father-son visitations satisfactorily. This cooperation is to be commended and should be continued. It will provide for a substantial amount of joint guidance and influence in the upbringing of this young boy—as much as can reasonably be expected when a marriage collapses and custody of the child or children is to be given to one of the two parents.

Affirmed.

FORT, J., dissenting.

I am unable on the facts of this case as outlined in the majority opinion to find such a change of circumstances as in my opinion warrants the change of custody. Nothing in this record supports the conclusion that the father is unfit to have the custody. If, as we must assume, the circumstances at the time of the entry of the decree were such, as the mother herself believed and testified, that it was in the best interest of the boy that he be in his father's custody, although allowing the boy to be under the physical care of the

mother when the father was away from home working, then the only change of circumstances which the evidence shows was the contemplated remarriage of the father. It is elementary that the remarriage of either parent standing alone does not itself constitute a basis for changing the custody of a child. The effect of the majority opinion is to place a premium upon the early remarriage of a noncustodial parent. As such it seems to me to be in derogation of the rule that remarriage alone is insufficient to support an order changing custody.

Furthermore, the mother in effect concedes here that the plan she and her husband agreed to for looking after the child while the husband worked was in the boy's best interest at the time of the decree. Otherwise, she in effect committed a fraud both on her husband and upon the court. I believe that the father should retain the custody of the child. If, following his remarriage and assumption of full-time care of the boy in his own home, it appears not to be working in the boy's best interest, then it will be time enough to consider whether a substantial change of condition detrimental to his welfare has occurred.

Accordingly, I respectfully dissent.